The **RESOLUTION TRUST CORP.,**
Plaintiff–Appellee,

v.

Leonard S. **ELMAN; Berger, Steingut, Tarnoff & Stern, Defendants–Appellants.**

No. 126, Docket 91–7448.

United States Court of Appeals, Second Circuit.

Argued Sept. 12, 1991.

Decided Nov. 26, 1991.

Harvey Weinig, New York City (Robert M. Bursky, Berger Steingut Tarnoff & Stern, New York City, of counsel), for defendants-appellants.

Joseph J. Ortego, Uniondale, N.Y. (Rivkin, Radler, Bayh, Hart & Kremer, Uniondale, N.Y., Jodi Mignati, The Resolution Trust Corp., Norristown, Pa., Evan H. Krinick, Kevin McElroy, of counsel), for plaintiff-appellee.

Before KEARSE, MINER and McLAUGHLIN, Circuit Judges.

MINER, Circuit Judge:

Defendants-appellants Leonard S. Elman and Berger Steingut Tarnoff & Stern, the law firm of which Elman is a member (collectively, the "Firm"), appeal from an order of the United States District Court for the Southern District of New York (Wood, *J.*) granting a preliminary injunction in favor of plaintiff-appellee The Resolution Trust Corporation ("RTC"). The injunction ordered appellants to transfer to the RTC certain files ("Files") relating to appellants' former client, Central Federal Savings Bank ("Bank"). *See The Resolution Trust Corp. v. Elman,* 761 F.Supp. 245, 250 (S.D.N.Y.1991). Appellants contend that they possessed a valid attorney's retaining lien against the Files under New York law, and that the district court's issuance of an injunction that effectively destroyed their lien was without basis in federal law.

For the reasons that follow, we hold that the district court did not abuse its discretion in issuing the injunction.

## BACKGROUND

The essential facts of this case are not in dispute. For some years, the Firm represented the Bank in connection with various matters, mostly mortgage foreclosures. On December 7, 1990, the United States Office of Thrift Supervision declared the Bank insolvent and appointed the RTC as receiver, pursuant to applicable statutory authority. *See* 12 U.S.C. § 1441a(b)(4) (RTC vested with all receivership powers of Federal Deposit Insurance Corporation set forth in 12 U.S.C. §§ 1821–23). At that time, the Files contained information on some 54 pending foreclosure actions being handled by the Firm on behalf of the Bank. The Firm then was owed by the Bank approximately $300,000 in legal fees and disbursements, an amount equal to certain funds of the Bank ("Funds") apparently held by the Firm.

On December 20, 1990, the RTC terminated the Firm's employment in all Bank matters on asserted conflict of interest grounds and requested that the Firm transfer the Files to the RTC's new counsel. The Firm refused to return the Files because of its asserted attorney's retaining lien; the lien was said to arise against the Files because the legal bills owed by the Bank had not yet been paid, despite submission by the Firm of those bills to the RTC in accordance with the RTC's instructions.

The RTC on February 8, 1991 brought an action for replevin of the Files in the district court. Judge Wood determined that the RTC had invoked the court's equitable powers and, accordingly, decided that a preliminary injunction would be an appropriate remedy in this case. *See Elman,* 761 F.Supp. at 248–50. Appellants did not seek from us a stay of the injunction pending this appeal, and have turned the Files over to the RTC as ordered.

## DISCUSSION

■ Our standard of review for a preliminary injunction is whether the issuance of the injunction constituted an abuse of discretion by the district court. *See Doran v. Salem Inn, Inc.,* 422 U.S. 922, 931–32, 95 S.Ct. 2561, 2567–68, 45 L.Ed.2d 648 (1975); *Carew–Reid v. MTA,* 903 F.2d 914, 916 (2d Cir.1990). Such an abuse of discretion typically consists of either applying incorrect legal standards or relying on clearly erroneous findings of fact. *See International Bhd. of Boilermakers v. Local Lodge D129,* 910 F.2d 1056, 1059 (2d Cir.1990).

The standard for issuing a preliminary injunction is well-settled in this Circuit, and was correctly stated by the district court. The party seeking the injunction must demonstrate (1) irreparable harm should the injunction not be granted, and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the party seeking injunctive relief. *See, e.g., Plaza Health Laboratories, Inc. v. Perales,* 878 F.2d 577, 580 (2d Cir.1989). As Judge Wood also accurately noted, we have not applied the more lenient standard of "serious questions going to the merits and a balance of hardships," instead of the "likelihood of success on the merits" standard, when the preliminary injunction is sought by a government agency such as the RTC, *see SEC v. Unifund SAL,* 910 F.2d 1028, 1039–40 (2d Cir. 1990), and she appropriately noted that it was inappropriate to apply the more lenient standard in the present case, especially since there had been no briefing or argument as to the status of the RTC when it acts as a receiver.

### A. *Probability of Success on the Merits*

■ Under New York law, a retaining lien entitles an attorney to keep, as security against payment of fees, all client papers and property, including money, that come into the attorney's possession in the course of employment, unless the attorney is discharged for good cause. *See People v. Keeffe,* 50 N.Y.2d 149, 155–56, 428 N.Y.S.2d 446, 449, 405 N.E.2d 1012, 1015 (1980). It is settled state law that a court cannot order the client's property transferred elsewhere until and unless (i) the court determines (or the parties agree to) the value of the attorney's services and (ii) the client either pays or posts adequate securi-

ty to cover that amount. *See Robinson v. Rogers*, 237 N.Y. 467, 469–74, 143 N.E. 647, 647–49 (1924); *Mint Factors v. Cedar Tide Corp.*, 133 A.D.2d 222, 223, 519 N.Y.S.2d 27, 28 (1987).

Were state law to govern, we likely would conclude on the facts of this case that the right to the Files is with the Firm. But state law alone does not govern the underlying dispute over possession of the Files. At issue instead is a federal statute that superimposes a new arrangement over the state law scheme, and alters what would otherwise be the respective rights and duties of the parties. The Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101–73, 103 Stat. 183 (1989) (codified as amended in scattered sections of 12 U.S.C.) provides an administrative scheme for adjudicating claims, such as those of the Firm, against the institution for which the RTC has become receiver.

■ As receiver, the RTC has the power to disallow "any claim by a creditor or claim of security, preference, or priority which is not proved to the satisfaction of the [RTC]." *See* 12 U.S.C. § 1821(d)(5)(D). This decision generally must be made within six months of the making of the claim. *See id.* § 1821(d)(5)(A). If the claim is disallowed by the RTC, the claimant may request an administrative review of that decision, or file "a suit on such claim" in federal district court. *See id.* § 1821(d)(6). We have confirmed recently that the statute means just what it says, and, accordingly, that a claimant must first present its case to the RTC under the administrative procedure erected by FIRREA before seeking relief in the federal courts. *See Circle Indus., Div. of Nastasi–White, Inc. v. City Fed. Sav. Bank*, 931 F.2d 7, 8 (2d Cir.1991). Until such time as the claim is disallowed by the RTC, "no court shall have jurisdiction over ... any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [RTC] has been appointed receiver, including assets which the [RTC] may acquire from itself as such receiver." 12 U.S.C. § 1821(d)(13)(D)(i).

New York courts frequently require the posting of security to justify transfer of papers that are subject to a retaining lien. *See Robinson*, 237 N.Y. at 472–74, 143 N.E. at 649; *Steves v. Serlin*, 125 A.D.2d 780, 781–82, 509 N.Y.S.2d 666, 667 (1986). We too might countenance a similar security requirement by the district court were this simply a matter between attorney and client. This is not such a matter. As Judge Wood accurately pointed out, recognition of the state law rights asserted by appellants as to the fixing of the amount of security would have involved the district court in reviewing claims that under FIRREA must be reviewed first by the RTC. *See Elman*, 761 F.Supp. at 247. Moreover, we note that FIRREA specifically prohibits ordering the RTC to post a bond as receiver. *See* 12 U.S.C. § 1822(a).

The plain language of FIRREA simply does not allow a federal court to recognize at this stage the rights and interests asserted by appellants. Put more bluntly, the stark reality of FIRREA is that for purposes of the underlying dispute here, the Firm does *not* have a retaining lien. Accordingly, the RTC would appear entitled to the Files in the same way that the Bank itself would be entitled to the Files were no monies owing. *See* 12 U.S.C. § 1821(d)(2)(A) (RTC as successor to all rights, titles, powers, privileges and assets of the failed institution); *see also id.* § 1821(d)(2)(B)(i) (RTC to take over all assets of the failed institution).

Nor are we the only authority to reject, on the basis of a statutory analysis substantially similar to that undertaken here, the types of arguments made by appellants. *See FDIC v. Shain, Schaffer & Rafanello*, 944 F.2d 129 (3d Cir.1991); *Circle Indus., Div. of Nastasi–White, Inc. v. City Fed. Sav. Bank*, 749 F.Supp. 447 (E.D.N.Y.), *aff'd*, 931 F.2d 7 (2d Cir.1990). Whether the analysis is categorized as implicating subject matter jurisdiction, the doctrine of exhaustion, or the supremacy of federal law over conflicting state law, the outcome of this dispute, on *these* facts and

*this* statute, is likely to be in favor of the RTC.

We find it significant that in *Coit Independence Joint Venture v. FSLIC,* 489 U.S. 561, 579–87, 109 S.Ct. 1361, 1371–76, 103 L.Ed.2d 602 (1989), a similar case resolved against the FSLIC as receiver, the relevant federal statutes contained almost none of the provisions we find significant in FIRREA. There appears to be a significant distinction between FSLIC's organic law and the provisions of FIRREA. *See id.* at 591–92, 109 S.Ct. at 1378 (Scalia, J., concurring). By negative implication, then, the Supreme Court's decision in *Coit* strengthens our analysis of FIRREA.

Appellants' various arguments concerning the propriety of the district court's order are either incorrect or irrelevant, being wrongly predicated on the erroneous belief that under FIRREA a state law retaining lien is legally cognizable and can be given effect by the federal courts at this stage of the process. Appellants suggest that Judge Wood improperly has invalidated a valid state law lien. On the contrary, it is FIRREA's natural operation that effectively supercedes an otherwise valid retaining lien. New York common law restrictions upon a court's power to order transfer of the Files are necessarily subject to the restrictions imposed by a federal statute that, for purposes of this case, could result in the cancellation of the lien. Far from *ignoring* or *re-writing* the provisions of FIRREA, as appellants contend, the district court was instead bound by the statute's explicit provisions. Appellants also protest that because of the injunction, they will be forced to litigate their claims anew should the RTC ultimately disallow such claims. This argument (like the assertion that a lien valid under state law is being invalidated) is quite correct, but beside the point. The point is that claims must be presented in accordance with FIRREA's statutory scheme.

We also reject the contention that, because their interest in the Files and the Funds puts them in a better position than the Bank's average unsecured creditors, appellants cannot be treated "simply as another unsecured creditor" of the Bank and should instead be treated like a secured creditor in bankruptcy. The very premise of this argument is false, because appellants do *not* have at this point an interest in the Files under FIRREA and are *not* better off than the Bank's other creditors. As to the Funds, that question is not before us because it was raised late in the district court proceedings and is subject to further fact-finding by Judge Wood. *See Elman,* 761 F.Supp. at 248 & n. 2. In any event, any retaining lien that might exist as to the Funds also would be subject to the statutory scheme.

The unsecured/secured creditor dichotomy appellants urge upon us fails because FIRREA itself makes no distinctions between secured and unsecured creditors that are relevant or helpful in this particular case. The statute does not permit premature judicial determination of claims when those claims are secured by assets of the failed institution; it grants no particular privileges to secured (as opposed to unsecured) creditors with respect to the relief a federal court may grant prior to RTC determination of the claim. In short, appellants are in the same position as any other creditor.

FIRREA does provide for expedited review by the RTC of claims asserting valid security interests (presumably including retaining liens) in the assets of the failed institution, where the claimant alleges irreparable injury should the routine claims process be followed. *See* 12 U.S.C. § 1821(d)(8)(A). Yet this provision only further emphasizes that the statutory recourse of all creditors, whether unsecured, fully secured, secured by Files, secured by Funds or secured by both, is with the RTC in the first instance. Indeed, because FIRREA specifically contemplates RTC review of the types of claims appellants assert here, it is apparent that federal courts should withhold premature adjudication of such claims.

Similarly, cases cited by appellants holding that retaining liens survive the filing of bankruptcy are of no consequence. We have in the past recognized that under

bankruptcy principles generally applicable to secured creditors, the bankrupt's attorney cannot be forced to remit to the estate property subject to the retaining lien without the provision of adequate security. *See In re Gold San Juan, Inc.,* 96 F.2d 60, 60–61 (2d Cir.1938) (decided under old Bankruptcy Act). However, the proper focus of inquiry here is the plain language of FIRREA, not judicial interpretations of the bankruptcy code. Even the most cursory comparison of FIRREA to bankruptcy statutes (old or new) reveals that the treatment of creditors differs substantially under the two statutes. It is self-evident that the differences are not unintentional. Indeed, even before FIRREA, we indicated that general bankruptcy principles are often inapposite in national bank receiverships because the latter present special challenges and circumstances. *See Corbin v. Federal Reserve Bank of New York,* 629 F.2d 233, 235–36 (2d Cir.1980), *cert. denied,* 450 U.S. 970, 101 S.Ct. 1492, 67 L.Ed.2d 621 (1981). The reasons for the distinctions are even more relevant today.

## B. *Irreparable Harm*

The district court determined that the RTC would suffer irreparable harm should the injunction not be granted because (i) the essential statutory mission of the RTC would be frustrated without the Files and (ii) the interest of the RTC in obtaining the Files far outweighed the burden to the Firm in surrendering them. *See Elman,* 761 F.Supp. at 248–49. We are satisfied that Judge Wood did not abuse her discretion in making these determinations.

Among the express purposes of FIRREA are the establishment of the RTC to "contain, manage and resolve" failed institutions, and the provision of "funds from public and private sources to deal expeditiously with" failed institutions. *See* Pub.L. No. 101–73, § 101, 103 Stat. at 187, 12 U.S.C. § 1811 notes. Accordingly, and in furtherance of these objectives, the RTC explicitly is directed to (i) conduct its operations so as to maximize net present value return from the sale or other disposition of the assets of failed institutions; (ii) minimize the impact of such transactions on

local real estate markets; (iii) make efficient use of the funds it receives from the federal government; (iv) minimize the amount of loss realized in the resolution of cases; and (v) "preserve and conserve the assets and property" of the failed institution. *See* 12 U.S.C. § 1441a(b)(3)(C); *id.* § 1821(d)(2)(B)(iv).

It cannot seriously be doubted that, without possession and use of the Files, the RTC would be unable to accomplish its statutory objectives. A large portion of the Bank's potential assets—that is, the real property securing non-performing mortgage loans—would be placed beyond reach because the RTC would be unable effectively to conclude appropriate foreclosure actions. Indeed, as the district court aptly noted, the RTC could not even determine the status of pending foreclosure matters. *See Elman,* 761 F.Supp. at 249. Substantial unrecoverable losses could result. We are satisfied that such an occurrence would constitute the type of imminent irreparable harm, inadequately compensable by mere money damages, that justifies the granting of preliminary injunctive relief. *See Tucker Anthony Realty Corp. v. Schlesinger,* 888 F.2d 969, 975 (2d Cir.1989) (irreparable harm found in imminent threat of demand on loans and consequent bankruptcy that could "bring down the whole house of cards").

Additionally, we agree with Judge Wood that a balancing of the interests involved in surrender of the Files to the RTC further supports the propriety of injunctive relief. In weighing the relative hardships, the district court correctly concluded that the public interest outweighed the purely private interest of the Firm in this case. *See Yakus v. United States,* 321 U.S. 414, 440–41, 64 S.Ct. 660, 674–75, 88 L.Ed. 834 (1944); *Virginian Ry. Co. v. System Federation No. 40, Ry. Employees Dep't,* 300 U.S. 515, 552, 57 S.Ct. 592, 601, 81 L.Ed. 789 (1937); *Stieberger v. Bowen,* 801 F.2d 29, 34 (2d Cir.1986) (citing *Carey v. Klutznick,* 637 F.2d 834, 839 (2d Cir.1980)). Insofar as the public is footing the bill for the winding up of failed depository institutions, it need hardly be said that the public has a very

strong interest in efficient resolution of any issue that may arise in the process. It is very much in the public interest to maximize the assets available to pay creditors of the institution, including depositors as well as law firm creditors.

Moreover, as noted previously, the RTC would be crippled in the conduct of its basic mission without the information contained in the Files. By contrast, while we are not without sympathy for the predicament of the Firm, it is not clear that the ultimate resolution of this matter will deny the Firm its fees. We recognize that, as a practical matter, having already given up the Files, appellants have lost "leverage" and may face the eventual prospect of being paid ratably out of general assets of the Bank. On the other hand, those assets are likely to be much greater now because the RTC possesses the Files. Additionally, and as the district court observed, if appellants are correct in their contention that they are entitled to retain the Funds, then appellants will be paid in full.

In any event, no matter what the eventual disposition of the claims may be, appellants will have been treated in accordance with a valid federal statute. There is nothing that a federal court can or should do beyond assuring such treatment.

We have considered appellants' remaining arguments, and find them to be without merit.

### CONCLUSION

The order of the district court granting a preliminary injunction in favor of appellees is affirmed.