**RESOLUTION TRUST CORPORATION, as Conservator of Central Federal Savings Bank, Successor in Interest to Central Federal Savings, FSB, Plaintiff,**

**v.**

**POLMAR REALTY, INC., Rudian Operating Corp., 303–309 10th Avenue Corp., 211 Management Corp., Maringof Garage, Inc., Inwood Management Corp., Freshstart Venture Capital Corp., People of the State of New York, City of the State of New York, City of New York Environmental Control Board, Tibor Schonfeld, Manya Schonfeld, Mark Schonfeld, Alan Schonfeld, United States of America, New York City Department of Finance, Isaak Gutman, Alex Gofman, New York State Department of Labor, Unemployment Insurance Division, Industrial Commission-**

er, "John Doe One" Through "John Doe One Hundred" the last one hundred names being fictitious and intended to designate the tenants or occupants of the premises in the foreclosure action, Defendants.

No. 91 Civ. 6685(MEL).

United States District Court,
S.D. New York.

Dec. 16, 1991.

Rivkin, Radler, Bayh, Hart & Kremer, Uniondale, N.Y., for plaintiff; Joseph J. Ortego, Michael E. Marsh, of counsel.

Rudes, Lax, Berkowitz & Mittman, P.C., New York City, for defendants Polmar Realty, Inc., Rudian Operating Corp., 303–309 10th Avenue Corp., 211 Management Corp., Maringof Garage, Inc., Inwood Management Corp., Isaak Gutman and Alex Gofman; Morrell I. Berkowitz, Carl Kuntz, Kamran Moattar, Legal Asst., of counsel.

LASKER, District Judge.

Plaintiff Resolution Trust Corporation ("RTC"), in its capacity as conservator of Central Federal Savings Bank, successor in interest to Central Federal Savings, FSB, moves for a preliminary injunction requiring the defendant mortgagor/owners and tenants of certain property located in Manhattan and subject to a mortgage held by the RTC, to allow the RTC to enter such premises to conduct Phase II environmental assessment field studies. The mortgagor-defendants [1] contend that RTC is not authorized by the mortgage instrument to conduct such tests and that, in any event, the tests it seeks to conduct are unnecessary, invasive and potentially dangerous, and constitute an undue burden on the current tenants and landowners. The mortgagor-defendants also cross-move (1) to dismiss the complaint for lack of jurisdiction under F.R.C.P. 12(c) on the basis of insufficiency of service of process and (2) to dismiss the action as to defendant In-

wood Management Corp. ("Inwood") on the ground that Inwood has been released from the blanket first mortgage lien which is the subject of this foreclosure complaint.

## I.

This is an action by the RTC to foreclose under a blanket first mortgage it owns and holds, in its capacity as a receiver of a failed savings and loan, on five pieces of property in Manhattan. The RTC's right to foreclose is indisputable. (The mortgagor-defendants have defaulted on their payment obligations under a $3,950,000.00 consolidated loan agreement which is secured by a mortgage on these properties, among others.) The issue here is whether, prior to taking title, the RTC should be allowed to conduct Phase II environmental studies to determine whether toxic substances exist on the property. By the instant motion, the RTC seeks to compel the defendant-mortgagors to allow it access to the property to conduct such studies. The RTC's concern stems from the fact that four of the five properties, currently or in the past, have been used as gas stations, and the RTC could expose itself to significant liability by its actions with relation to the property.

In 1980, Congress enacted the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601, *et seq.* (1982 & West Supp.1988) ("CERCLA") in response to the environmental and public health hazards caused by the improper disposal of hazardous wastes. CERCLA authorizes the federal government to clean up hazardous waste dump sites and recover the cost of the effort from certain categories of responsible parties, including the owners and operators of a facility where hazardous wastes have been released or are in danger of being released. *See* 42 U.S.C. § 9607(a) (1982 & West Supp.1988).

Recent developments in the law have increased the risk of a secured lender getting

---

**1.** The moving defendants are Polmar Realty, Inc., Rudian Operating Corp., 303–309 10th Avenue Corp., 211 Management Corp., Maringof Garage, Inc., Inwood Management Corp., Isaak Gutman, and Alex Gofman. The tenants have not yet appeared in this proceeding.

stuck with the bill for environmental clean-ups on mortgaged property. In *Chase Lincoln First Bank, N.A. v. Kesselring–Dixon Incorporated,* 147 Misc.2d 12, 554 N.Y.S.2d 379 (Sup.Ct., Onondaga Co. 1990), a New York court held last year that a mortgagee who is on notice that "contamination of the property was well within the realm of possibility," but who nevertheless completes a foreclosure on the property may not undo the foreclosure later, upon the discovery of toxic substances, to seek damages. *Chase Lincoln First Bank,* 554 N.Y.S.2d at 382.[2] The court held that a mortgagee was on notice of possible contamination because it knew of the prior ownership of the property by a gasoline company. *Id.* Federal courts have also held recently that secured lenders may be liable for environmental cleanups under CERCLA even prior to taking title if they have exercised a certain degree of control over the property. *See, e.g., United States v. Fleet Factors Corp.,* 901 F.2d 1550 (11th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 752, 112 L.Ed.2d 772 (1991): "[A] secured creditor will be liable if its involvement with the management of the facility is sufficiently broad to support the inference that it could affect hazardous waste disposal decisions if it so chose." *Fleet Factors,* 901 F.2d at 1558.

The RTC has sought repeatedly over the past few months to gain the mortgagor-defendants' permission to enter on the premises to conduct the necessary studies, but has been rebuffed. Accordingly, the RTC now seeks a preliminary injunction to compel the defendants to provide access and to allow the tests to be conducted.

## II.

■ A hearing was held with regard to the contested factual questions including the service of process issue. On the basis of the testimony of defendant Alex Gofman and Polina Sodolevsky, the wife of defendant Isaak Gutman, I find that defendants Isaak Gutman and Alex Gofman have been properly served. The RTC served defendants Gofman and Gutman pursuant to Rule 4(c)(2)(C)(i), by serving copies of the Summons and Complaint on their respective wives at Gofman's and Gutman's usual places of abode. Service on Gofman was effected on October 31, 1991; service on Gutman was effected on November 12, 1991. Furthermore, service on the corporate moving defendants—Polmar Realty, Inc., Rudian Operating Corp., 303–309 10th Avenue Corp., 211 Management Corp., Maringof Garage, Inc., Inwood Management Corp.—was also properly effected, as evidenced by the affidavits of service of process provided by the RTC, indicating that the Secretary of State of the State of New York was served on November 22, 1991, as agent for service of process of the mortgagor-defendant corporations.

The Partial Release of Mortgage dated March 8, 1990, which defendants claim, releases defendant Inwood from its obligations under the Consolidation and Spreader Agreement dated May 3, 1988, does not in fact release Inwood; it only releases certain property located at 3976 Tenth Avenue, New York, New York, which at that time, also secured the RTC's mortgage.

## III.

■ A party moving for an injunction in this Circuit must establish (1) irreparable harm and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claim to make them fair ground for litigation, and a balance of hardships tipping decidedly in favor of the moving party. *See, e.g., Plaza Health Lab's, Inc. v. Perales,* 878 F.2d 577, 580 (2d Cir.1989).

■ In the Second Circuit, the rule is that a government agency moving for an injunction, of which the RTC can be regarded as one, must establish that it will succeed on the merits and cannot rely on the more lenient standard of "serious questions going to the merits and balance of hard-

---

**2.** The *Chase Lincoln* court denied a motion brought by a mortgagee who had foreclosed, to amend the judgment of foreclosure and sale to grant money damages because of its discovery of hazardous wastes on the property.

ships." *Resolution Trust Corp. v. Elman,* 949 F.2d 624, 627 (2d Cir.1991).

As to the requirement of irreparable injury, the RTC contends that 12 U.S.C. § 1821(d)(18) and (19), passed in 1990, eliminated the "irreparable harm" requirement with respect to motions for preliminary injunctions made by the FDIC and the RTC, in the capacity of conservator or receiver, as to assets which they have acquired or liabilities they have assumed as a result of intervening in a failed savings and loan.

> Rule 65 of the Federal Rules of Civil Procedure [which concerns preliminary injunctions and temporary restraining orders] shall apply with respect to any proceeding under paragraph (18) *without regard to the requirement of such rule that the applicant show that the injury, loss or damage is irreparable and immediate.*

12 U.S.C. § 1821(d)(19) (emphasis added). Neither the Court of Appeals of this Circuit nor the United States District Courts in New York have ruled on whether 12 U.S.C. § 1821(d)(18) and (19) eliminate the irreparable harm requirement for preliminary injunctions. We need not decide the issue here because we find that the RTC has succeeded in making an adequate showing of irreparable injury.

A. *Irreparable Harm*

 Under CERCLA a property owner is liable for the environmental cleanup of property that is contaminated if it forecloses upon it, and under recent case law, it appears that a secured lender may be precluded from suing the former owners for money damages, after it has obtained a judgment of foreclosure and sale, to cover the costs of the cleanup of any hazardous wastes discovered on the property. *Chase Lincoln First Bank, N.A. v. Kesselring–Dixon Incorporated,* 147 Misc.2d 12, 554 N.Y.S.2d 379 (Sup.Ct., Onondaga Co. 1990). In the circumstances, not allowing the RTC to enter the property to perform environmental studies could force it to incur serious potential liability for environmental cleanup or else forego foreclosing on the property altogether. In such a situation the RTC would be unable to protect itself against the possibility of serious liability and would, accordingly, suffer irreparable harm.[3]

B. *Probability of Success on the Merits*

 The RTC argues that it is likely to succeed on the merits of its foreclosure action, and the defendants have suggested no defenses, other than those ruled against them above in this opinion. However, because the RTC may decide *not* to foreclose upon the property after conducting the environmental studies, its likelihood of success on the underlying foreclosure action is beside the point.

 The relevant question is whether the RTC is likely to succeed on its claim that under the mortgage instrument it is entitled to conduct the type of studies it proposes. Paragraph 15 of the governing mortgage (incorporated by reference into the consolidated mortgage) provides that, upon the mortgagor defendants' default, the lender has "an absolute right to the immediate possession of the mortgaged [Premises] and may enter upon said [Premises]...."[4] The RTC has argued that this provision encompasses a right to conduct Phase II environmental studies.

---

**3.** In addition, in the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), the federal statute which overhauled the system for federal regulation of savings and loans and provided for the creation of the RTC to manage and resolve failed savings and loans, Congress explicitly directed the RTC to conduct its operations so as to maximize net present value return for the sale or other disposition of the assets of failed institutions and to "preserve and conserve the assets and property" of the failed institution. *See* 12 U.S.C.

§ 1441a(b)(3)(C); *id.* § 1821(d)(2)(B)(iv). Thus not allowing the RTC to conduct the environmental studies it seeks here could also frustrate the purposes of FIRREA.

**4.** The provision reads in its entirety: "That in the event of any default hereunder, the holder of this mortgage shall have an absolute right to the immediate possession of the mortgaged premises and may enter upon said premises, receive and collect any and all rents derived therefrom and if vacant, let the same, ..."

The defendant-mortgagors contend that Paragraph 15 is a standard provision which confers only a right of entry on the premises upon default, and that if the parties intended to provide the mortgagee with a right of inspection and testing, particularly the broad ranging inspection plaintiff now seeks, they would have expressly contracted accordingly. However, the purpose of the right to immediate possession and reentry clause is, among other things, to give the mortgagee a right to control the physical characteristics and condition of the property and protect it from further damage prior to the transfer of title. It seems a reasonable interpretation, in light of modern circumstances and recent developments of law, *see, e.g., Chase Lincoln First Bank, N.A. v. Kesselring–Dixon Incorporated*, 147 Misc.2d 12, 554 N.Y.S.2d 379 (Sup.Ct., Onondaga Co. 1990) *and United States v. Fleet Factors Corp.*, 901 F.2d 1550 (11th Cir.1990), that it authorizes reentry for the purpose which RTC is asking us to approve.

■ A hearing was held on this motion at which testimony as to the nature of the proposed tests and the risks involved was received. According to expert witnesses on both sides, whatever burden the Phase II testing might cause is minimal. Phase II studies involve boring and removing several soil samples, four to six inches in diameter, near each of the underground gas tanks located on the properties. The mortgagor-defendants contend that obtaining these core samples could be extremely dangerous and disruptive to the business of the tenants who are in possession of the properties. However, according to the expert witnesses on both sides, these samples could be obtained in two to three days and would only require the presence of a small truck with drilling equipment. As to the defendants' various arguments concerning the risk of rupturing fuel tanks or pipes, cutting through gas, electrical or water lines or steam pipes, or even interfering in some way with the operation of subway lines which may lie beneath two of the premises,—of course, there is always some risk in conducting such tests, but as the defendants' own expert conceded, with the exercise of a reasonable degree of care, the tests can be done with a high degree of safety. Moreover, the injunction can be so conditioned as to insure that the individuals conducting the Phase II studies take all precautions to limit disruption to current tenants/landowners and the property; to require that the tests be conducted carefully and in accordance with all governmental regulations; and to provide that the appropriate parties be insured against damage to person or property that may occur as a result of the testing.

\* \* \* \* \* \*

Plaintiff's motion for an order compelling the mortgagor-defendants and tenant-defendants to allow plaintiff to conduct Phase II environmental tests on the premises is granted subject to the conditions specified above. Defendants' cross-motion to dismiss is denied.

Submit proposed decree on notice to all affected parties.