**Peter FORBES, Clark Quin, and Karen Kimmel, Plaintiffs,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, Defendant.**

**Civ. A. No. 93–11203–JLT.**

United States District Court, D. Massachusetts.

April 29, 1994.

Jeffrey S. Baker, Bruce Medoff, Baker & Associates, Boston, MA, for plaintiffs.

Kenneth R. Berman, A. Neil Hartzell, Sherin & Lodgen, Boston, MA, for defendant.

### MEMORANDUM

TAURO, Chief Judge.

#### I.

##### Background

Plaintiffs Peter Forbes, Clark Quin and Karen Kimmel reside in a building located at 241 A Street, South Boston. In 1986, Peter Diem, the owner of plaintiffs' building, granted a mortgage on the building to the Bank of New England, N.A ("BNE").

On January 6, 1991, the Office of the Comptroller of Currency determined that BNE was insolvent and appointed the Federal Deposit Insurance Corporation as receiver. The FDIC subsequently chartered New Bank of New England (NBNE) as a new national banking association. NBNE was dissolved in July 1991, and the FDIC was again appointed receiver.

On October 25, 1991, the FDIC foreclosed on plaintiffs' building. In early 1992, plaintiffs complained to the FDIC about the condition of their building and several safety concerns, which they claim were not addressed. Subsequently, on July 10, 1992, the FDIC commenced summary process actions against plaintiffs in South Boston District Court, seeking possession of the premises and payment of overdue rent. The actions were consolidated and transferred to the Boston Housing Court.

According to plaintiffs, this attempt to evict them was illegal because the FDIC did not comply with Boston Rent Equity Board ("Rent Board") regulations. During the summary process actions, Plaintiffs hired an architect, who examined their building for code violations. Plaintiffs claim that they reported the specified code violations to the FDIC, but the FDIC again failed to remedy the violations. As a result, plaintiffs asserted several counterclaims against the FDIC, based upon the same underlying issues raised in this action. On April 13, 1993, the parties stipulated to a dismissal of the summary process actions and all counterclaims.[1]

In May 1993, Quin, Forbes, and Kimmel filed an action in state court, alleging claims for breach of contract (Count I); violations of Mass.G.L. ch. 93A (Count II); violations of the rent equity ordinance (Count III); breach of the implied covenant of habitability (Count IV); claims arising from code violations (Counts V, VI, and VII); negligence (Count VIII); and abuse of process (Count IX). The FDIC removed this case on June 2, 1993.

In their Complaint, plaintiffs seek injunctive relief ordering the FDIC to correct the housing code violations and enjoining the FDIC from seeking to evict plaintiffs illegally. Plaintiffs also seek double or treble damages for the allegedly illegal eviction proceeding brought in the Boston Housing Court.[2]

Presently before the court is the FDIC's amended motion to dismiss.[3]

#### II.

##### Analysis

The FDIC argues that this court lacks subject matter jurisdiction over plaintiffs' claim because they failed to comply with the administrative claims procedure mandated by the Financial Institutions Reform, Recovery and Enforcement Act (FIRREA) prior to filing this action. *See* 12 U.S.C. § 1821(d)(13)(D).[4] *See also Marquis v.*

---

1. The parties stipulated to a dismissal without prejudice, pursuant to Mass.R.Civ.P. 41(a)(1). Hartzell Aff.Ex. B.

2. In addition, earlier this year, plaintiffs also sought an emergency preliminary enjoining the FDIC from continuing with summary process proceedings instituted against them in the South Boston District Court on January 13, 1994. In that action, plaintiffs filed counterclaims against the FDIC—making the same allegations included in their Complaint in this case—and the FDIC

removed the action. On February 14, 1994, the parties stipulated to a dismissal, after the plaintiffs voluntarily dismissed their counterclaims.

3. The FDIC's amended motion to dismiss also incorporates the arguments made in their earlier motion to dismiss. The court addresses all of the arguments below.

4. 12 U.S.C. § 1821(d)(13)(D) provides:
   Except as otherwise provided in this subsection, no court shall have jurisdiction over—

*FDIC,* 965 F.2d 1148, 1151 (1st Cir.1992) (noting that, under FIRREA, exhaustion of the administrative claims process is required); *Espinosa v. DeVasto,* 818 F.Supp. 438 (D.Mass.1993) (same).

## A.

■ In general, under FIRREA, plaintiffs may assert claims against the FDIC under 12 U.S.C. § 1821(d) [5] or 12 U.S.C. § 1821(e).[6] In the initial opinion rendered by the First Circuit in *Heno v. FDIC,* 996 F.2d 429, 432–33 (1st Cir.1993), the court distinguished between claims arising under § 1821(d) and § 1821(e), and held that claims arising under § 1821(e) were not subject to the administrative claim filing requirements outlined in

> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
>
> (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

**5.** 12 U.S.C. § 1821(d) provides for claims asserted against the assets of the failed bank.

**6.** 12 U.S.C. § 1821(e) provides for claims arising out of the FDIC's disaffirmance of preexisting contracts between the failed institution and another party.

**7.** The First Circuit observed that under the administrative claims process outlined in § 1821(d), claims filed more than 90 days after the FDIC had been appointed receiver are barred, unless the claimant had not received notice of the FDIC's appointment. But because claims arising from the disaffirmance of a contract under § 1821(e) could arise whenever the FDIC opted to disaffirm the contract, the First Circuit reasoned that the administrative claims review process could not have been intended to preclude judicial review of such claims. Otherwise, the FDIC might elect to disaffirm a contract 91 days after the FDIC had been appointed receiver, and the claimant would be precluded from seeking relief. Although the claimant might have had notice of the FDIC's appointment, its claim obviously could not arise until the FDIC actually disaffirmed the contract. The First Circuit, therefore, concluded that Congress could not have intended to preclude administrative review of such claims simply because they arose after the expiration of the administrative claim filing period. *Heno,* 996 F.2d at 434–35.

**8.** Plaintiffs seem to argue that their claims arise under § 1821(e), not § 1821(d), because the § 1821(d).[7] Relying upon this distinction, plaintiffs appear to argue that because their claims arose under § 1821(e), they were not required to exhaust their administrative claims prior to filing suit.[8]

On April 22, 1994, however, the First Circuit withdrew its prior opinion, and substituted a new decision in *Heno v. FDIC,* 20 F.3d 1204 (1st Cir.1994). The First Circuit's new opinion no longer distinguishes between claims arising under either § 1821(d) or § 1821(e). Rather the First Circuit appears to conclude that regardless of whether claims arise under § 1821(d) and § 1821(e), all claims are subject to the administrative claims process.[9]

FDIC sought to evict them in violation of Rent Board regulations in order to avoid compliance with state housing law. They note that it was only after they informed the FDIC of the "deplorable living conditions and the numerous safety issues" in their building in early 1992, that the FDIC sought to evict them. Pls.' Mem.Opp'n.Mot.Dismiss at 2. Plaintiffs rely upon *Resolution Trust Corp. v. Diamond,* 801 F.Supp. 1152 (S.D.N.Y.1992), *rev'd in rel. part,* 18 F.3d 111 (2d Cir.1994), in which the district court held that the Resolution Trust Corporation (RTC) could not use its power to disaffirm contracts under 1821(e) in violation of state housing regulations. This decision was recently reversed, in part, by the Second Circuit.

The FDIC argued, however, that plaintiffs' claims for enforcement of housing laws and for damages arising from the allegedly illegal summary process action arise under 12 U.S.C. § 1821(d). The FDIC then argued that because the plaintiffs did not exhaust their administrative remedies under 12 U.S.C. § 1821(d) prior to filing this action, this court lacked jurisdiction to hear the claim. *Marquis v. FDIC,* 965 F.2d 1148, 1151 (1st Cir.1992).

**9.** On rehearing, the FDIC argued that it had interpreted its internal manual procedures to dispense with any requirement that the claimant file the claim within the 90–day period when claims arose under § 1821(e) more than 90 days after the claimant has notice that the FDIC has been appointed receiver. Because this reading eliminated the First Circuit's concerns that prospective claimants would be proscribed from seeking relief before their claims even arose, the First Circuit found that judicial deference was due the FDIC's interpretation of the statute. *Heno,* 20 F.3d at 1208. In addition, the First Circuit also noted that the FDIC had proffered "sound policy grounds" for allowing the FDIC the opportunity to review post bar-date claims in the first instance—such as the FDIC's administrative exper-

As a result, whether plaintiffs' claims arise under § 1821(d) or § 1821(e), under the First Circuit's new opinion in *Heno*, plaintiffs' claims are subject to the administrative claims process.

### B.

Quin, Forbes, and Kimmel contend that even if they are subject to FIRREA's administrative claims process, they have already properly exhausted their administrative claims. Plaintiffs have submitted copies of letters from the FDIC, noting that the FDIC denied their administrative claims in August 1993, approximately three months after they filed this action in state court, and two months after the FDIC removed the case to the court. Pls.' Supp.Mem.Opp'n.Mot.Dismiss, Ex. A, B, & C.

Under the statute, however, plaintiffs should have exhausted their administrative claims *before* they filed this action in state court. FIRREA specifically provides that "[e]xcept as otherwise provided in this subsection, no court shall have jurisdiction over any [suits against the FDIC.]" *See* 12 U.S.C. § 1821(d)(13)(D). Under § 1821(d)(6)(A), a claimant may file suit in court within 60 days of (1) the denial of a claim by the FDIC; or (2) the conclusion of the 180–day period during which the FDIC could have determined the administrative claim. Given this statutory framework, the court finds that plaintiffs were prohibited from filing their claims until after they had received notice, in August 1993, that their administrative claims had been disallowed or until after the 180–day determination period for administrative claims had expired. *See* Marquis, 965 F.2d at 1151 (*citing Meliezer v. Resolution Trust Co.*, 952 F.2d 879, 882 (5th Cir.1992) (dismissing claim for lack of subject matter jurisdiction and noting that "[a]lthough FIRREA does not explicitly mandate exhaustion of administrative remedies before judicial intervention, the language of the statute and indicated congressional intent make clear that such is required.")). *See also RTC v. Elman*, 949 F.2d 624, 627 (2d Cir.1991) ("[A] claimant must first present its case to the RTC under the administrative procedure erected by FIRREA before seeking relief in the federal courts.") [10]

Because plaintiffs did not exhaust their administrative claims prior to filing this action, the claim was jurisdictionally defective when it was filed.[11] The First Circuit has previously observed that a plaintiff may not use post-complaint events to create jurisdiction or satisfy prerequisites to suit. *Garcia v. Cecos Int'l Inc.*, 761 F.2d 76, 78–82; *accord McNeil v. United States*, — U.S. —, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993) (noting that a Federal Tort Claims Act plaintiff may not satisfy prerequisites to suit after filing of complaint). The court, therefore, concludes that this case must be dismissed for lack of subject matter jurisdiction. *Meliezer*, 952 F.2d at 882–83; *RTC v. Mustang Partners*, 946 F.2d 103, 106 (10th Cir.1991); *Circle Industries, Division of Nastasi–White, Inc. v. City Federal Savings Bank*, 749 F.Supp. 447, 451–455 (E.D.N.Y.1990), *aff'd*, 931 F.2d 7 (2d Cir.1991).[12]

tise and an interest in reducing judicial litigation of FIRREA claims. *Id.* at 1209 – 1210.

**10.** Plaintiffs argue that even if the administrative claims process must be completed prior to filing suit in federal court, the proper response is for this court to issue a stay and not a dismissal, pursuant to the First Circuit's decision in *Marquis*.

But plaintiffs' reliance on *Marquis* is misplaced. In *Marquis*, the First Circuit addressed claims filed before the FDIC had been appointed receiver. *Marquis*, 965 F.2d at 1155. Because claims filed before the FDIC is appointed receiver are obviously not subject to FIRREA's administrative claims process until the FDIC has been appointed receiver, a court presumably has prop-

er subject matter jurisdiction at the time the claims are filed.

Here, however, plaintiffs' claims arose after the FDIC had been appointed receiver. As a result, before this court could acquire subject matter jurisdiction, plaintiffs were required to exhaust their administrative claims.

**11.** The court expresses no opinion on whether a court might later obtain jurisdiction over any future claims plaintiffs may have for continuing code violations, assuming plaintiffs properly exhaust their administrative claims.

**12.** Because the court dismisses for lack of subject matter jurisdiction, it is unnecessary to reach the FDIC's argument that this suit is barred by the two-dismissal rule in Fed.R.Civ.P. 41(a)(1).

98

### III.

*Conclusion*

For the foregoing reasons, defendant's amended motion to dismiss will be ALLOWED.