FRIENDS OF THE EARTH,
et al., Plaintiffs,

v.

U.S. FOREST SERVICE and American
Forest & Paper Association,
Defendants

No. CIV.2:98–CV–410.

United States District Court,
D. Vermont.

May 11, 2000.

Steven Sugarman, Sante Fe, NM, Brian Scott Dunkiel, Friends of the Earth, Northeast Office, Burlington, VT, for Friends of the Earth, Green Mountain Forest Watch, Seventh Generation, Inc., Forest Guardians, Breitenbush Hot Springs Retreat & Conference Center, Inc., Earth Island Project, Idaho Sporting Congress, Federation of Western Outdoors Clubs, Native Forest Council, Andy Mahler, Robert Fener, Rene Voss, Thomas Vuyovich, David Derringer, Laura Erickson, plaintiffs.

Joseph Robert Perella, AUSA, Office of the United States Attorney, District of Vermont, Burlington, VT, J. Michael Klise, Crowell & Moring, Washington, DC, W. John McNally, III, Hanover, NH, for United States Forest Service, an agency of the United States Department of Agriculture obo United States of America (Department of Agriculture), American Forest and Paper Association, intervenor-defendants.

## OPINION AND ORDER

SESSIONS, District Judge.

In this action for injunctive and declaratory relief against the United States Forest Service ("USFS," "Forest Service"), Plaintiffs Friends of the Earth, et al, ("Friends") move for a preliminary injunc-

tion (paper 29) and for partial summary judgment (paper 31). USFS has filed a Cross–Motion for Summary Judgment (paper 54), as have Defendant–Intervenors American Forest & Paper Association ("American") (paper 47).[1] For the following reasons, the Court DENIES Plaintiffs' Motion for Preliminary Injunction (paper 29), and GRANTS Defendants' Motions for Summary Judgment with regard to claims relating to Moss Glenn II and Hapgood Pond; otherwise, the motions are DENIED (paper 54 and 47). The Court DENIES Plaintiffs' Motion for Partial Summary Judgment (paper 31).

## I. Factual Background

Friends filed the original complaint in this case in December 1998. In their First Amended Complaint, Friends alleges that several timber sales on National Forest Land fail to comply with the Rangeland Renewable Resources Planning Act of 1974 ("RPA"), the Multiple–Use Sustained–Yield Act of 1960 ("MUSYA"), the National Forest Management Act ("NFMA"), the National Environmental Policy Act ("NEPA"), the Global Climate Change Act ("GCCPA"), the Administrative Procedures Act ("APA"), and Forest Service Rules and Regulations. More specifically, Friends takes issue with USFS's alleged failure to take into account the full spectrum of social and economic costs and benefits associated with National Forest land and resource management, in violation of the above statues, regulations, and rules. Logging in four sites in Vermont, namely the Utley Brook Project, the Kelly–Sunderland Area, the Hapgood Pond Project, and the Moss Glenn II Project was allegedly undertaken without proper analysis of the costs and benefits of logging and alternative uses of the land. According to Friends, USFS failure to consider most non-timber values and uses and the externalized costs of

logging lead to the improper use of the National Forest. Friends alleges similar violations of statutory, regulatory, and rule prescribed requirements in logging sites in Alaska, Arizona, California, Florida, Idaho, Minnesota, Oregon, and Washington.

Logging in the Green Mountain National Forest ("GMNF"), which includes the Vermont sites challenged in this suit, began as early as 1994. However, logging was suspended in the summer of 1999 until December 15, 1999 for reasons unrelated to the present suit. Friends filed a Motion for Preliminary Injunction to stop cutting in the Vermont sites in December 1999, and sought expedited review.

By January 2000, nearly all of the challenged Vermont timber cutting was completed. In response to the concern that the case would be mooted at the completion of cutting, USFS agreed to a voluntary partial stay of the timber harvest at Utley Brook. However, this agreement was limited in scope; the remainder of the harvesting activities challenged in this case continued unimpeded. Thus, despite the partial stay which prevents the mooting of this case, Friends seeks a preliminary injunction on the grounds that it will suffer irreparable harm if the final stages of timber harvest are conducted on the remaining challenged Vermont logging sites.

## I. Preliminary Injunction

Injunctions are governed by Rule 65(a) of the Federal Rules of Civil Procedure. Preliminary injunctions are "extraordinary remed[ies] not to be granted routinely." *JSG Trading Corp. v. Tray–Wrap, Inc.*, 917 F.2d 75, 80 (2d Cir.1990). The Second Circuit has determined that a "party seeking a preliminary injunction must demonstrate '(1)a showing of irreparable harm if the injunction is not granted and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to

---

1. Generally, Defendant and Defendant–Intervenor will be referred to collectively as  "USFS" or "Defendant."

the merits and a balance of hardships tipping decidedly toward the party seeking injunctive relief.'" *National Association for Advancement of Colored People, Inc. (NAACP) v. Town of East Haven*, 70 F.3d 219, 223 (2d Cir.1995), (citing *Resolution Trust Corp. v. Elman*, 949 F.2d 624, 626 (2d Cir.1991)).

The less stringent "serious questions" prong is unavailable "where the moving party seeks to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme." *Id.* In the present case, USFS actions were taken pursuant to statutory authority, in accordance with public participation procedures which allowed opportunities for public comment, and thus fall within the ambit of action taken in the public interest. Thus, Plaintiffs are not entitled to the less stringent "serious questions" standard.

To receive a preliminary injunction, Plaintiffs must first show irreparable harm. Irreparable harm exists when "but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *Brenntag International Chemicals, Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir.1999).

Environmental injury often constitutes per se irreparable harm. The Supreme Court has stated that "[e]nvironmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, i.e., irreparable. If such injury is sufficiently likely, therefore, the balance of harms will usually favor the issuance of an injunction to protect the environment." *Amoco Prod. Co. v. Village of Gambell, Alaska*, 480 U.S. 531, 545, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987). In *Sierra Club v. United States Forest Service*, 843 F.2d 1190, 1191 (9th Cir.1988), the denial of a preliminary injunction was overturned as the Court found that logging in the absence of completed environmental impact statements demonstrated environmental injury. In *New York v. Nuclear Regulatory Commission*, 550 F.2d 745, 753–754 (2d Cir.1977), the Second Circuit's denial of a preliminary injunction against the continued transport of nuclear materials by air was based on the reasoning that, unlike the cutting of timber, it did not constitute immediate or irreparable threat of harm.

Although the cutting of trees alone often constitutes irreparable injury, extensive and inexplicable delay in bringing a motion for preliminary injunction severely undercuts pleadings of irreparable harm. "Lack of diligence, standing alone, may [...] preclude the granting of preliminary injunctive relief, because it goes to the issue of irreparable harm [...]." *Majorica v. R.H. Macy & Co., Inc.*, 762 F.2d 7, 8 (2d Cir. 1985). Timber harvesting on the challenged sale sites began as early as 1994, yet Plaintiffs brought the motion for preliminary injunction in December 1999. Friends has offered no explanation for the delay.

Friends argues that although most of the timber harvest is complete, the remaining work to be done on these sites is ground disturbing and will cause the Plaintiffs further injury. However, very little ground disturbing activity remains to be completed in the four challenged sites. As of March 20, ninety-three percent of the work at Kelley–Sunderland was completed, as was seventy-nine percent of the work at Utley Brook. Thus, many acres of Utley Brook and Kelley–Sunderland remain uncut. Furthermore, counsel for the Forest Service stated at the preliminary injunction hearing that much of the then remaining work, particularly at Moss Glen II, is "soil erosion mitigation or cleanup of the landing, seeding the landings, putting water bars in. An injunction would cause environmental harm, not prevent it." This work has now been completed, and the winter cutting is also completed. As there is no further activity being performed on these sites, and because thirty acres at Utley Brook will remain uncut until December 2000, Plaintiffs will experience no

irreparable harm in the absence of a preliminary injunction.

■ Friends has failed to show that irreparable harm would be caused by the remaining activities to be completed on the sites that are not covered by the USFS' voluntary stay at Utley Brook. The Court need not address the question of likelihood of success on the merits, as the motion fails on the basis of lack of irreparable harm. Thus, Friends' request for a preliminary injunction is denied.

## II. Motions for Summary Judgment

### A. Standards

Summary judgment is appropriate when there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56(c); *Alexander & Alexander Services, Inc. v. These Certain Underwriters at Lloyd's, London, England*, 136 F.3d 82, 86 (2d Cir.1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The movant bears the burden of showing that no genuine issue of material fact exists. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223 (2d. Cir.1994) (citing *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir.1975)). All ambiguities must be resolved and all inferences from the facts drawn in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In sum, "[t]he court must draw all reasonable inference in favor of the non-moving party and only grant summary judgment for the moving party if no reasonable trier of fact could find in favor of the non-moving party." *Vermont Gas Systems, Inc. v. United States Fid. & Guar. Co.*, 805 F.Supp. 227, 231 (D.Vt.1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–52; 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

### B. Government's Motion

The Government first contends that the claims addressing Kelley–Sunderland, Moss Glenn II, and Hapgood Pond are moot, as the projects are completed or nearly complete. At the time of the writing of this opinion, Moss Glenn II and Hapgood Pond were completed, including post-harvest mitigation measures. However, the work at Kelly–Sunderland was not completed on schedule.

■ Given that neither case nor controversy exist with regard to the two completed sites, the motion is granted as to Moss Glenn II and Hapgood Pond. Since the issue of mootness resolves the Hapgood Pond matter, the Court need not address USFS's argument regarding the statute of limitations as it relates to Plaintiffs' challenge to the Hapgood Pond decision. Kelley–Sunderland, however, is not mooted from this case, as a number of trees remain standing on the logging site. Thus, summary judgment is not justified on mootness grounds.

The Government's second contention is that this Court lacks jurisdiction on the basis of Friends' alleged failure to exhaust administrative remedies. 7 U.S.C. § 6912(e). Section 6912(e) states "a person shall exhaust all administrative appeal procedures established by the Secretary [of Agriculture] or required by law before the person may bring an action in a court of competent jurisdiction against" the Department. In *Bastek v. Federal Crop Ins. Corp.*, 145 F.3d 90, 94–95 (2d Cir.1998), the Second Circuit held that where an explicit exhaustion requirement exists, courts may not apply judicially created exceptions to it. Section 6912(e) clearly provides an explicit exhaustion requirement.

At the heart of this case is the contention that the Forest Service is required by a variety of statutes, rules and regulations to perform a cost benefit analysis of a multiplicity of economic and non-economic factors prior to harvesting timber on National Forest Land; and, if such a require-

ment exists, whether the USFS did so with regard to the challenged sites. Specifically, Friends seeks to have the Forest Service consider the values of the National Forest which are generally not considered in economic terms before engaging in timber sales. Although it may initially appear that Friends has failed to raise this issue in its broadest sense at the administrative appeal level, the issue has been raised below.

The administrative record for the Utley Brook Decision is illustrative here. The Utley Brook appeal record shows that Friends "specifically requested the Forest Service to itemize each of the benefits and demonstrate the public interest in the expense and disclose to the public all costs and benefits associated with proposed activities [ . . . ]." The Appeal Deciding Officer made no written commentary regarding this request. Rather, he affirmed the District Ranger's approval of the Utley Brook project in a brief letter dated October 17, 1997, without further comment. This letter referred petitioners to the District Ranger's recommendation for details.

The District Ranger's recommendation was not particularly illuminating regarding Friends request for the specific cost benefit analysis. In response to the request for a disclosure of the "all costs and benefits associated with the proposed activities," the District Ranger simply stated the following: "In reviewing the Environmental Assessment and Decision Notice I found that economics was identified as a project issue (EA, P.13), and a full economic disclosure is shown in the Economic Analysis section of the Environmental Assessment (EA, P.70–73) for the alternatives developed for this Project Area. Public comments related to economics were responded to in Appendix A (EA, Appendix A, P. 81–82). The Proposed Action alternative selected in the Decision Notice (DN, P.20) is an above cost alternative with rationale for economic considerations discussed.".

None of the pages in either the Environmental Assessment or the Decision Notice performs disclosure of the "all costs and benefits associated with the proposed activities," as Friends had requested. Rather, the general area of "economics" appears to be addressed in certain areas, as noted by the District Ranger. The Court recognizes that it is yet undetermined whether more detailed and extensive disclosure is required by law. However, nothing in the Appeal Officer's decision or the District Ranger's recommendation directly addresses the issue of whether the Forest Service found that such analysis and disclosure were required. Merely stating that "economics" were considered does not address the question posed by Plaintiffs in this case.

Furthermore, while disclosure of some economic considerations assessed by the Forest Service in their analysis of the proposed logging is clearly discussed, there is no discussion of whether further research in "all costs and benefits associated with the proposed activities" was required. This oversight on the part of the Forest Service may have been in part due to inartful pleading on the part of the appellants. Nonetheless, it remains unclear if the Forest Service has addressed the issue of whether or not a full cost benefit analysis of all effects of the proposed activities was required prior to the timber sales.

"Generally, a court reviewing an agency decision is confined to the administrative record compiled by that agency when it made the decision. Supplementation of that record upon remand to the agency may be necessary when the record does not support the agency action, when the agency has not considered all relevant factors, or when the reviewing court simply cannot evaluate the challenged action on the basis of the record before it." *National Audubon Society v. Hoffman,* 132 F.3d 7 (2d. Cir.1997), citing *Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 743–44, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985). "Should a review of the administrative record reveal a paucity of administrative explanation or the failure to ad-

dress pertinent issues, such that effective judicial review is frustrated, the proper remedy is still not a de novo review in this court. Instead, the appropriate procedure to be followed is to remand the matter [to the Agency] for a further explanation [...] or, where appropriate, supplementation of the record." *Montgomery National Bank v. Clarke,* 703 F.Supp. 1161, 1172 (D.N.J.1989)(citing *Camp v. Pitts,* 411 U.S. 138, 143, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973); *Madison County Bldg. & Loan Ass'n · v. Federal Home Loan Bank Bd.,* 622 F.2d 393, 396 (8th Cir.1980)). When the "Court [ ] cannot intelligently perform [its] reviewing function," *Sierra Club v. United States Army Corps of Eng'rs,* 772 F.2d 1043, 1052 (2d Cir.1985), it must " 'remand to the agency for additional investigation or explanation' so that the existing administrative record can be supplemented with documentation, affidavits or testimony from the agency sufficient for the court to complete its assessment." *Natural Resources Defense Council v. Fox,* 30 F.Supp.2d 369 (S.D.N.Y.1998) (citing *Florida Power,* 470 U.S. at 744, 105 S.Ct. 1598 and *Sierra Club,* 772 F.2d at 1052).

It is unclear to the Court whether the Forest Service has answered Plaintiffs requests for a disclosure of "all costs and benefits associated with the proposed activities." The Forest Service may have determined that consideration of the myriad costs and benefits of economic and non-economic factors was unnecessary, or it may have deemed the timber sales a proper course of action upon completion of the requested analyses. However, the record's ambiguous description of the general consideration of "economics" is insufficient for establishing whether there was any consideration of Plaintiffs' specific request. Therefore, the Court remands to the Forest Service the issue of whether such an analysis was required.

In order to clarify the issue fully, the Forest Service should address the issue with regard to both Kelley–Sunderland and Utley Brook, and in the context of all alleged violations of MUSYA, the RPA, NEPA, the APA, the NFMA, the GCCPA, and Forest Service Regulations and Rules. To assist the Forest Service in this process, Friends should rearticulate the issues it raised below to the Forest Service. Once the issues are more artfully and specifically described by Plaintiffs, framed to more clearly address each alleged violation of each statute raised, the Forest Service will be able to clarify its stance on these allegations. The Court will then be able to proceed on the motions before it with a more clear understanding of the record below.

The Government's contention that there are no remaining material elements in dispute cannot be addressed until the record has been clarified for the Court through a more extensive administrative review. Thus, summary judgment in favor of the Forest Service is inappropriate at this time.

### C. Plaintiffs' Motion

Likewise, the Plaintiffs' Motion for Partial Summary Judgment is premature, as clarification and resolution of certain elements in this case may arise in the administrative hearings. The Court will wait to address these issues, as well as the Forest Service's remaining arguments, until after the administrative review process is complete. Thus, the motion is denied without prejudice.

### IV. Order

For the reasons stated above, Plaintiffs' Motion for Preliminary Injunction (paper 29) is hereby DENIED without prejudice. Defendants' Motions for Summary Judgment (paper 54 and 47) are GRANTED with regard to Moss Glenn II and Hapgood Pond, and otherwise DENIED without prejudice. Plaintiffs' Motion for Partial Summary Judgment (paper 31) is DENIED without prejudice. All claims

relating to Hapgood Pond and Moss Glenn II are DISMISSED as moot.