Clifford ROWE, et al., Plaintiffs,

v.

Samuel PIERCE, et al., Defendants.

Civ. A. No. 85–2455.

United States District Court,
District of Columbia.

Dec. 4, 1985.

Richard C. Eisen, Washington, D.C., for plaintiffs.

Patricia D. Carter, Asst. U.S. Atty., Washington, D.C., for defendants.

## MEMORANDUM

GESELL, District Judge.

This case requires the Court to determine whether tenants who have entered into an agreement with their landlord for a fixed rental charge and, under local laws, cannot be evicted for refusing to sign a written lease, lose those rights if the landlord's property is transferred to the Secretary for Housing and Urban Development (HUD) under of regulations that HUD claims preempt local law. The case is before the Court on cross-motions for summary judgment after the parties stipulated that plaintiffs' motion for a preliminary injunction should be treated as a motion for summary judgment. Finding that there are no material facts in dispute, the Court proceeds to rule on the merits following receipt of briefs and full oral argument.

Plaintiffs are tenants in single-family dwellings located in the District of Columbia. In January of 1985 plaintiff entered into a settlement agreement with their landlord in which they agreed to dismiss a landlord-tenant suit and the landlord agreed to set their rent at $300 per month

for the next three years. The agreement provides that the rent levels shall be binding on all future owners of the property.

The owners of plaintiff's property had a mortgage with a private lender and the mortgage was insured by the Department of Housing and Urban Development pursuant to the National Housing Act. 12 U.S.C. § 1701–1750g. The owners defaulted on the mortgage and it was sold to the mortgagee at a foreclosure sale. The mortgagee sought to exercise his option to receive the benefit of the HUD insurance by conveying the property to HUD, *id.* § 1710(a), and HUD determined that it was in the interest of the Secretary to accept occupied conveyance of the property, based on its regulations. 24 C.F.R. § 203.670. After accepting ownership of the property, HUD notified the plaintiff that HUD regulations required that they sign a HUD lease as a condition of continued occupancy. The lease offered by HUD provided for a rent of $300 per month only through the end of 1985. Plaintiff's, citing their settlement agreement with the prior owner, refused to execute a lease. In July, 1985 HUD issued a 30 day notice that required plaintiffs to sign the HUD lease or vacate the property. Plaintiffs promptly brought this action to enjoin HUD's efforts to evict them.

If HUD were a private party and local laws were the only relevant law, HUD could not evict plaintiffs for refusing to sign the lease offered by HUD. The District of Columbia's landlord tenant law provides that "Except as provided in this section, no tenant shall be evicted from a rental unit ... so long as he or she continues to pay the rent to which the landlord is entitled for such rental unit." D.C.Code § 45–1561(a); D.C. Rental Housing Act of 1985, § 501(a), 32 D.C.Reg. 3089 (June 7, 1985). Refusal to sign a lease is not among the grounds for eviction provided under the statute. The local courts have recently and repeatedly decided that this restriction on eviction applies to an insurer who takes ownership of the property after a default on the mortgage just as if the insurer was the original landlord. *Administrator of Veterans Affairs v. Valentine,* 490 A.2d 1165 (D.C.App.1985); *Washington Federal Savings & Loan v. District of Columbia Housing Commission,* 492 A.2d 279 (D.C.App.1985); *Merriweather v. D.C. Building Corp.,* 494 A.2d 1276 (D.C.App.1985).

■ HUD claims that its regulations governing the conveyance of occupied property preempt this local law. The regulations provide that HUD will only accept conveyance of occupied property if it is satisfied that (1) it it is in the Secretary's interest to accept conveyance of the property occupied, as determined by specified criteria, *see* 24 C.F.R. § 203.671;[1] (2) the property is habitable; and (3) the occupant meets the eligibility criteria set forth in § 203.674, which include agreeing to execute a lease at fair market rental on a form prescribed by HUD. 24 C.F.R. § 203.670. In an ordinary conveyance, HUD notifies the tenants or the conveyance before acquiring the property in order to determine if the conditions for occupied conveyance can be met, and permit the occupants to appeal for reconsideration of an adverse decision. 24 C.F.R. §§ 203.676, 203.677, 203.678. However, the Secretary may accept occupied conveyance without notice to the occupants, as was done in this case. 24 C.F.R. §§ 203.679, 203.683. The regulations provide that the tenants' continued occupancy is "temporary in all cases and subject to termination to facilitate preparing the property for sale" and "appropriate eviction action" may be taken if a tenant fails to execute a HUD lease at fair market rental. 24 C.F.R. § 203.680.

HUD's interpretation of these regulations presents a direct conflict with the local housing law that requires determining whether the local law has been preempted. The question of preemption is guided by "familiar and well-established principles:"

> [T]he enforcement of a state regulation may be pre-empted by federal law in

1. Or, alternatively, the occupants suffer from a temporary illness or injury which would be ag-

gravated by the process of moving from the property.

several circumstances: first, when Congress, in enacting a federal statue has expressed a clear intent to pre-empt state law, ... second, when it is clear, despite the absence of explicit pre-emptive language, that Congress has intended, by legislating comprehensively, to occupy an entire field of regulation and has thereby "left no room for the states to supplement" federal law, ... and, finally, when compliance with both state and federal law is impossible, or when the state law "stands as an obstacle to the accomplishment of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941).

*Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 104 S.Ct. 2694, 2700, 81 L.Ed.2d 580 (1984) (citations omitted).

Congress's actions in passing the National Housing Act do not satisfy any of these conditions. The relevant statutory language provides that "Notwithstanding any other provision of law relating to the acquisition, handling, or disposal of real property by the United States, the Secretary shall have power to deal with, complete, rent, renovate, modernize, insure, or sell for cash or credit any properties conveyed to him ...." 12 U.S.C. § 1710(g). This section provides a general authorization for the Secretary to manage and dispose of property acquired through the insurance program and avoid the complex procedures and restrictions imposed on disposing other types of federal property. Nothing in the statute or the legislative history indicates any congressional intent to preempt state property and contract law. Indeed, where Congress felt it might be necessary to preempt state law it did so explicitly. *See* 12 U.S.C. § 1709–1a (preempting state constitutional and legal limits on interest chargeable on loans, mortgages and other financing arrangements).

Far from compelling preemption, the nature of the HUD insurance program suggests a presumption against preemption. Through HUD mortgages and insurance the federal government acts within existing housing markets and exiting state law to promote the development of housing through private business. "[W]hen an agency of the federal government insinuates itself into the local business world, as HUD does here under the mortgage insurance and foreclosure provisions of the NHA, it should as a general rule, be held to the same legal obligations as a private property owner." *Burroughs v. Hills*, 564 F.Supp. 1007, 1018 (N.D.Ill.1983); *accord City of Philadelphia v. Page*, 363 F.Supp. 148 (E.D.Pa.1973).

Recognizing that the statute does not by its terms preempt local law, HUD argues that the Secretary, pursuant to his authority to "deal with" acquired property, has preempted. The guidelines for determining if regulations preempt state law have also been clearly set out:

"Federal regulations have no less preemptive effect than federal statutes... When the administrator promulgates regulations intended to pre-empt state law, the court's inquiry is similarly limited: 'If [h]is choice represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statue, we should not disturb it unless it appears from the statue or its legislative history that the accommodation is one that Congress would not have sanctioned.'"

*Capital Cities Cable, Inc. v. Crisp*, 104 S.Ct. at 2701, *quoting, Fidelity Federal Savings and Loan Association v. De La Cuesta*, 458 U.S. 141, 153–54, 102 S.Ct. 3014, 3022–23, 73 L.Ed.2d 664 (1982), *quoting, United States v. Shimer*, 367 U.S. 374, 383, 81 S.Ct. 1554, 1560, 6 L.Ed.2d 908 (1961).

In this instance the Court cannot accept the defendant's argument that the regulation is a "reasonable accommodation of conflicting policies" because there is absolutely no indication that the Secretary intended to preempt state law. Displacing state law ordinarily should be a deliberate, not an inadvertant act. When the Secretary specifically confronts the problem of conflicting state law, and explicitly con-

cludes that matters within his authority must be exclusively regulated by federal regulations, the courts will uphold his actions. *See City of Boston v. Harris*, 619 F.2d 87, 97 (1st Cir.1980) (upholding explicit preemption of local rent control by HUD, see 24 C.F.R. §§ 246.1–246.31); *Fidelity Federal Savings & Loan Association v. De La Cuesta*, 458 U.S. 141, 146–47, 102 S.Ct. 3014, 3018–19, 73 L.Ed.2d 664 (1982) (upholding Federal Home Loan Bank Board's intentional preemption of state law). But this is not like "a case where a national administrator surveys the problem of varying state approaches and concludes a national policy is necessary." *Kargman v. Sullivan*, 552 F.2d 2, 6 (1st Cir.1977). Nowhere in the statement of purpose for the regulations or the Secretary's response to rulemaking comments is there any indication that HUD considered the issue of preemption or believed that these regulations might have that effect. *See* 44 Fed. Reg. 23800 (1979); 45 Fed.Reg. 59561 (1980). The rules are primarily directed at giving local HUD administrators guidance on the procedures and criteria for accepting occupied property. The regulations appear to assume that the background law provides for tenancy-at-will. Their effect is to provide a decisionmaking process that provides tenants with notice and appeal procedures before acting on evictions. There is no indication that HUD intended to erase the contractual rights tenants enjoyed under the previous owner or displace local landlord-tenant laws.

█ In the absence of any intent to preempt, any consideration of preemption, and any reason provided in the regulations for preempting local law the Court cannot accept HUD's present gloss on the regulations. "[P]reemption of state law by federal statute or regulation is not favored in the absence of any persuasive reasons—either in that nature of the regulated subject matter permits no other conclusion, or that Congress has unmistakably so ordained." *Commonwealth Edison v. Montana*, 453 U.S. 609, 634, 101 S.Ct. 2946, 2962, 69 L.Ed.2d 884 (1981), *quoting Florida Lime and Avocado Growers v. Paul*, 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963). The present expressions of opinion by HUD officials that the regulations should be interpreted to preempt do not constitute sufficient grounds for preemption. *See Arkansas Electric Cooperative Corp. v. Arkansas Public Commission*, 461 U.S. 375, 386 n. 10, 103 S.Ct. 1905, 1913 n. 10, 76 L.Ed.2d 1 (1983).

In this case every other indication is against preemption. First it must be recognized that landlord-tenant law is an area traditionally left to the states. In such areas, the intent to preempt must be particularly " 'clear and manifest.' " *Douglas v. Seacoast Products*, 431 U.S. 265, 272, 97 S.Ct. 1740, 1745, 52 L.Ed.2d 304 (1977), *quoting, Rice v. Sante Fe Elevator*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). Moreover, the federal housing laws do not constitute a comprehensive federal regulatory scheme. Housing is an area where Congress intended, and the Secretary permits two complimentary systems of regulations to supplement each other with local law providing the general background law and federal law intervening only where federal involvement is deemed necessary. Federal preemption is not to be lightly assumed and the two schemes should be interpreted to allow both to operate. *See New York State Department of Social Services v. Dublino*, 413 U.S. 405, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973). Finally, absent a clear necessity a Court may not lightly conclude that the federal government should be permitted to enhance the value of its property for quick sale by frustrating local law, extinguishing the tenants' protections against eviction, and ignoring contract rights negotiated in a settlement with the prior landlord. The Court will not assume the Secretary has so drastically displaced local law without even considering the consequences.

HUD's regulations do not preempt local law and must be interpreted as providing the grounds and procedures for eviction only where no contradictory local law exists. The "appropriate eviction action" authorized by the regulations is an action

which is also appropriate under local law—nothing more. Defendant's efforts to evict the plaintiffs for refusing to sign a lease must be enjoined. An appropriate order is filed contemporaneous with this opinion.