**RESOLUTION TRUST CORPORATION, as receiver of Nassau Savings and Loan Association, F.A., Plaintiff,**

v.

**Selma DIAMOND, Ira Kaufman, Jerome Lederer, Peggy Lehman, Susan Solomon Pattullo, Lloyd Ribner, as executor of the estate of Muriel Ribner, deceased, Horace Solomon, Lillian Solomon, Denise Tucker, Angelo Aponte, Commissioner of the Division of Housing and Community Renewal of the State of New York, and Robert Abrams, Attorney General of the State of New York, Defendants.**

**Robert ABRAMS, Attorney General of the State of New York, and New York State Division of Housing and Community Renewal, Plaintiffs,**

v.

**RESOLUTION TRUST CORPORATION, Nassau Savings and Loan Association, F.A., Jerome Maron, and Anthony T.S. Conrad, Defendants.**

Nos. 91 Civ. 1361 (RLC), 91 Civ. 1683 (RLC).

United States District Court, S.D. New York.

Aug. 21, 1992.

Nixon, Hargrave, Devans & Doyle, New York City (Frank H. Penski, Vicki L. Safran and Kermitt J. Brooks, of counsel) and Resolution Trust Corp., Washington, D.C. (Gerald L. Jacobs, Richard T. Aboussie and Kevyn D. Orr, of counsel), for Resolution Trust Corp., Jerome Maron, and Anthony T.S. Conrad.

Robert Abrams, Atty. Gen. of State of N.Y., New York City, Atty. pro se and for New York State Div. of Housing and Community Renewal (Frederick K. Mehlman and Karen Smith, Asst. Attys. Gen., of counsel).

Wien, Malkin & Bettex, New York City, for Selma Diamond, Ira Kaufman, Jerome Lederer, Peggy Lehman, Horace Solomon, Lillian Solomon, and Denise Tucker (Robert Machleder, of counsel).

Buchwald & Kaufman, New York City, for Susan Solomon Pattullo (Don D. Buchwald, of counsel).

Behar & Greer, New York City, for Lloyd Ribner, Jr. (Leon I. Behar, of counsel).

**ROBERT L. CARTER, District Judge.**

At issue in these consolidated actions is whether the Resolution Trust Corporation ("RTC") is empowered by federal statute to evict tenants in RTC-controlled apartments in violation of state rent control, rent stabilization, and securities laws. The RTC contends that its enabling statute contains such authorization, and that contrary state laws are preempted under the Supremacy Clause of the United States Constitution. The Attorney General of the State of New York and the New York State Division of Housing and Community Renewal ("DHCR") (collectively the "State") argue that the RTC has no such power, and that state laws regulating rent and evictions are not preempted and must be obeyed by the RTC. Both the RTC and the State have moved separately for summary judgment.

The first of the consolidated cases is a declaratory judgment action, No. 91 Civ. 1361 (RLC), brought by the RTC as receiver of Nassau Savings and Loan Association, F.A. ("Nassau Savings"), against Angelo Aponte, the Commissioner of DHCR; Robert Abrams, the Attorney General of the State of New York; and the individual lessees of nine condominium units located at 444 East 57th Street, New York, New York (the "East 57th Street units") that the RTC acquired as a result of the failure of Nassau Federal Savings and Loan Association ("Nassau Federal"). The RTC has sought to evict rent-regulated tenants in the East 57th Street units and has adopted a policy statement which sets out its intention to take similar action against rent-regulated tenants in all other cooperative and condominium units under its control.[1]

---

1. The RTC adopted a "Statement of Policy for the Disposition of Residential Units Which Were Previously Subject to Rent or Securities Regulation" (the "policy statement") in February, 1991. The policy statement declares, in relevant part:

 1. The policy of the RTC will be to exercise its disaffirmance or repudiation powers with regards [*sic*] to these units when it deter-

mines that: 1) the insured depository institution is a party to the lease; 2) the performance of which the conservator or receiver determines, in its discretion, to be burdensome; and 3) ... the disaffirmance or repudiation of which the conservator or receiver determines, in its discretion, will promote the

In this action the RTC, which was established by Congress for the purposes of managing and disposing of the assets of failed savings and loan institutions, seeks to establish that it has the right under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub.L. 101–73, 103 Stat. 183; 12 U.S.C. § 1441a(b), to disaffirm and repudiate condominium and cooperative unit leases; that this authority under FIRREA preempts any state law or regulation to the contrary; and that the RTC may therefore sell the East 57th Street units pursuant only to FIRREA provisions and without restraint of any law or regulation of New York State or New York City.

In the second of the consolidated actions, No. 91 Civ. 1683 (RLC), the State challenges the RTC's authority to disregard New York State's comprehensive statutory scheme regulating the offer and sale of cooperative and condominium apartments and the rights of rental tenants. The State seeks declaratory and injunctive relief enjoining the RTC from taking any action in violation of the state rent and securities laws.

## I.

The RTC finds its power to repudiate the leases of tenants of rent-regulated housing in 12 U.S.C. § 1821(e)(1), a part of FIRREA, which reads as follows:

**(e) Provisions relating to contracts entered into before appointment of conservator or receiver.**

**(1) Authority to repudiate contracts.**

In addition to any other rights a conservator or receiver may have, the con-

servator or receiver for any insured depository institution may *disaffirm or repudiate any contract or lease—*

**(A)** to which such institution is a party;

**(B)** the performance of which the conservator or receiver, in the conservator's or receiver's discretion, determines to be burdensome; and

**(C)** the disaffirmance or repudiation of which the conservator or receiver determines, in the conservator's or receiver's discretion, will promote the orderly administration of the institution's affairs.

12 U.S.C. § 1821(e)(1) (emphasis added). The RTC argues that state rent and securities laws that regulate allowable rents and provide tenants with protection from eviction frustrate the accomplishment of the RTC's mandate under FIRREA to maximize the net present value of the assets of failed thrift institutions. The RTC therefore asserts that it may, pursuant to its discretionary powers under section 1821(e)(1), repudiate and disaffirm the leases of tenants in rent-regulated housing under its control in New York State, and thereby exercise control over the apartments free from the constraints of the state rent and securities laws.

The State responds that FIRREA does not give the RTC the power to disregard the requirements of state rent and securities laws. The State argues that the occupancy rights of tenants in New York's rent-regulated housing do not stem from leases or contracts, but instead from statutory tenancies created by the state rent control and rent stabilization laws. The State contends that section 1821(e)(1) gives the RTC

---

orderly administration of the institution's affairs.

. . . . .

2. Where the RTC finds that units are leased by low or moderate income tenants, the RTC will not exercise its disaffirmance or repudiation powers with respect to those units. For this purpose, a low or moderate income tenant is defined as a family or individual whose income does not exceed one hundred and fifteen percent (115%) of the median income in the area involved....

3. Where the RTC determines to disaffirm or repudiate the leases of such units, the RTC

may, in its discretion, offer the units for sale to the existing tenants or negotiate other arrangements, on terms which the RTC finds acceptable, in accordance with its mandate to maximize recoveries on the assets of the institutions in its control. If the existing tenants decline or fail to purchase the units or to enter into any other agreement acceptable to the RTC, the RTC will be free to consummate the disaffirmance or repudiation and to take whatever action it deems appropriate for the disposition of the units.

Complaint, No. 91 Civ. 1361 (RLC), Exhibit D.

power to repudiate or disaffirm contracts and leases but not statutory tenancies, and that the RTC therefore does not have the power to evict the East 57th Street tenants, or any other tenants of rent-regulated housing under RTC control in New York State.

The RTC replies to the State's argument by asserting that FIRREA has preempted whatever rights tenants in rent-regulated housing may have under New York statutory law, thereby leaving only a lease relationship between the tenants and the RTC as landlord. The RTC would then be free to repudiate the leases under section 1821(e)(1). The issue of whether the state · rent and securities laws are preempted by FIRREA is complicated, however, and will require extensive discussion.

Under the Supremacy Clause of the United States Constitution, laws passed by Congress become the law of the land, "any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., Art. IV, Cl. 2. However, "[p]reemption of state law by federal statute is not favored 'in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained.'" *Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 317, 101 S.Ct. 1124, 1130, 67 L.Ed.2d 258 (1981) (quoting *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10

L.Ed.2d 248 (1963)). This presumption against preemption applies especially where the state law said to be preempted is within the traditional police powers of the states. *See Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 157, 98 S.Ct. 988, 994, 55 L.Ed.2d 179 (1978); *Rogers v. Consolidated Rail Corp.*, 948 F.2d 858, 859 (2d Cir. 1991). In such cases, the party arguing for preemption carries a heavy burden of showing that preemption was the "clear and manifest purpose of Congress." *Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Com.*, 461 U.S. 190, 206, 103 S.Ct. 1713, 1723, 75 L.Ed.2d 752 (1983); *see also General Motors Corp. v. Abrams*, 897 F.2d 34, 41–42 (2d Cir.1990) ("compelling evidence" of an intent to preempt must be shown where the area is traditionally regulated by the states).

■ The state laws that the RTC claims are preempted by FIRREA deal with rent and real estate securities regulation, which are areas within the traditional police powers of the states. *See Rowe v. Pierce*, 622 F.Supp. 1030, 1033 (D.D.C.1985). Accordingly, there is a presumption against preemption of the state laws by FIRREA.[2]

Federal statutes can preempt state laws in three ways: expressly, through implication, or where there is a conflict between the state and federal laws. *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 300, 108 S.Ct. 1145, 1150, 99 L.Ed.2d 316 (1988); *California Fed. Sav. & Loan Ass'n v. Gu-*

---

**2.** The RTC argues that the presumption against preemption only arises where the *federal* legislation regulates areas traditionally within the police powers of the states, not where the state laws allegedly preempted do so. The RTC asserts that FIRREA, as a federal banking statute designed to solve a crisis among savings and loan institutions, is not a federal statute that involves the traditional police powers of the states, and that therefore no presumption against preemption should apply here.

This argument misses the mark. First, the cases make clear that a presumption against preemption arises not only when federal legislation involves areas historically reserved to the states, but also when the state statutes sought to be preempted do as well. *See Rogers, supra,* 948 F.2d at 859; *Medical Soc. of State of New York v. Cuomo,* 777 F.Supp. 1157, 1160–61 (S.D.N.Y.1991) (Haight, J.).

Second, the rationale behind having such a presumption in the first place applies whether the federal or the state laws involve the traditional police powers of the states. The doctrine is designed to ensure that the traditional police powers of the states not be lightly superseded by federal laws. *See California v. ARC America Corp.,* 490 U.S. 93, 101, 109 S.Ct. 1661, 1665, 104 L.Ed.2d 86 (1989); *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). Given this rationale, it matters little whether the federal legislation addresses areas of traditional state concern directly, or whether the state laws that the federal legislation is claimed to preempt address such state police powers. In either case, concern for protecting against unintentional federal displacement of state laws justifies a presumption against preemption of state by federal law.

*erra,* 479 U.S. 272, 280, 107 S.Ct. 683, 689, 93 L.Ed.2d 613 (1987). Express preemption is found where the federal legislation contains an express statement of a clear and manifest intent to preempt state laws. *Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977). Implied preemption occurs where there is a clear indication that Congress intended to occupy the entire regulatory field. *Guerra, supra,* 479 U.S. at 280–81, 107 S.Ct. at 689. The third type of federal displacement of state law, "conflict preemption," occurs either where there is a conflict between the federal and state laws which makes compliance with both laws physically impossible, or where there is a conflict in which application of the state law will create an obstacle to the accomplishment of the full objectives of Congress. *California v. ARC America Corp.,* 490 U.S. 93, 100–101, 109 S.Ct. 1661, 1664–1665, 104 L.Ed.2d 86 (1989); *Silkwood v. Kerr–McGee Corp.,* 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984); *Medical Soc. of State of New York v. Cuomo,* 777 F.Supp. 1157, 1161 (S.D.N.Y.1991) (Haight, J.). The RTC contends that the state rent and securities laws are preempted on the basis of express provisions of FIRREA and because of a conflict between the state laws and FIRREA.

## II. *Express Preemption*

■ The RTC argues first that FIRREA expressly preempts the state rent and securities regulations. The RTC relies on 12 U.S.C. § 1821(c)(2)(C), which reads: "When acting as conservator or receiver ... the [RTC] shall not be subject to the direction or supervision of any ... State in the exercise of the [RTC]'s rights, powers and privileges." The RTC asserts that the state rent and securities laws subject the RTC to the direction of the state in the exercise of the RTC's rights, powers and privileges, and that the state provisions are therefore expressly preempted by section 1821(c)(2)(C). However, the State challenges the RTC's apparent assumption that its "rights, powers and privileges" include the power to repudiate a statutory tenancy. If, as the State argues, the tenants in the East 57th Street units occupy their apart-

ments by virtue of statutory tenancies rather than leases, and if the RTC does not have the power under section 1821(e)(1) to repudiate such statutory tenancies, then the RTC's "rights, powers and privileges" do not include the power to repudiate the tenancies, and there can be no express preemption under section 1821(c)(2)(C).

Accordingly, determination of whether the state rent and securities laws are expressly preempted by FIRREA requires the court to address two separate questions: 1) whether the tenants in this case have occupancy rights by virtue of leases or instead pursuant to statutory tenancies independent of any leases; and, 2) if these rights derive from statutory tenancies, whether the "any contract or lease" language of section 1821(e)(1) empowers the RTC to repudiate statutory tenancies as well as the more traditional landlord-tenant relationship embodied in a lease.

### A. *Occupancy Rights of Rent–Regulated or Non–Purchasing Cooperative and Condominium Tenants*

The State claims that the East 57th Street tenants, and others in their situation, are in continued possession of their apartments not by virtue of any leases entered into between themselves and their landlords, but because of statutory tenancies created by at least one of three statutes: New York's rent control law, its rent stabilization law, or a section of its general business law commonly referred to as the "Martin Act."

■ New York law provides two systems of protection for certain rental properties: rent control and rent stabilization. Both systems regulate allowable rents and protect tenants from eviction except under specified circumstances. Section 26–408 of New York's rent control law provides:

No tenant, so long as he or she continues to pay the rent to which the landlord is entitled, shall be removed from any housing accommodation which is subject to rent control under this chapter by action to evict or recover possession, by exclusion from possession, or otherwise,

nor shall any person attempt such removal or exclusion from possession notwithstanding the fact that the tenant has no lease or that his or her lease, or other rental agreement, has expired or otherwise terminated, notwithstanding any contract, lease, or obligation heretofore or hereafter entered into which provides for surrender of possession, or which otherwise provides contrary hereto, . . . except on certain specified grounds, e.g. that the tenant is violating a substantial obligation of the tenancy, or where the landlord has obtained a certificate of eviction from the supervising government agency. N.Y. City Admin.Code § 26–408 a, *reported following* N.Y. Unconsol. Law § 8617 (McKinney 1987). The language of the statute itself makes clear that the tenants it covers enjoy a protection from eviction that is independent of any lease that may exist between landlord and tenant.

New York case law supports this interpretation. As the court noted in *In re Friarton Estates Corp.*, 65 B.R. 586 (Bankr.S.D.N.Y.1986), "[u]nder New York law, the occupancy of a statutory tenant is 'not under any agreement, express or implied, but by virtue of the compulsion exerted on the landlord by the local emergency rent laws which allowed him to remain in possession.'" *Id.* at 592 (quoting *Whitmarsh v. Farnell*, 298 N.Y. 336, 343, 83 N.E.2d 543 (1949)). Similarly, when called upon to determine whether rent-controlled tenants held their apartments by lease or by statutory tenancy, the court in *W.T. Associates v. Huston*, 123 Misc.2d 24, 26, 472 N.Y.S.2d 562, 564 (Sup.Ct.N.Y.Cty. 1984), held that rent controlled tenants "are statutory tenants . . . [who] do not hold leases. . . ." Thus, the tenants in the East 57th Street units, as well as all other tenants in rent-controlled housing now under the control of the RTC, enjoy occupancy rights under New York law that are independent of any lease or contractual relationship with their landlords.

 New York's rent stabilization laws are structured somewhat differently, but the result is the same. The rent stabilization law requires owners to grant a renewal lease of one or two years to all rent-stabilized tenants. *See* N.Y. City Admin.Code § 26–511, *reported following* N.Y. Unconsol. Law § 8617 (McKinney 1987); N.Y. Comp.Codes R. & Regs. tit. 9, part 2522.5 (1990). However, while rent-stabilized tenants, unlike rent-controlled tenants, do hold leases, they also enjoy statutory rights that are independent of any lease. If a landlord refuses to offer a tenant a renewal lease, the tenant has the right under statutory law to remain in possession and continue paying the previously authorized rent. The leases merely provide a means for periodically increasing the rents landlords are allowed to charge. *See Park Summit Realty Corp. v. Frank*, 107 Misc.2d 318, 323, 434 N.Y.S.2d 73, 76–77 (App. T. 1st Dep't 1980), *aff'd*, 84 A.D.2d 700, 448 N.Y.S.2d 414 (1st Dep't 1981), *aff'd*, 56 N.Y.2d 1025, 453 N.Y.S.2d 643, 439 N.E.2d 358 (1982) (applying *Whitmarsh v. Farnell, supra*, 298 N.Y. at 343, 83 N.E.2d 543, reasoning to rent stabilization as well as rent control context); Affidavit of Angelo Aponte, Commissioner of DHCR, Jan. 9, 1992, ¶¶ 12–16. Accordingly, even if RTC repudiated the leases of rent-stabilized tenants in the condominium or cooperative units it controls, those tenants would still enjoy statutory rights to remain in possession of their apartments indefinitely and without a rent increase. Aponte Affidavit, ¶ 14.

 The third law that the State contends gives a statutory tenancy to the tenants at the East 57th Street units, as well as to other non-purchasing tenants in cooperative and condominium units controlled by the RTC, is the Martin Act, N.Y. Gen. Bus. Law, §§ 352 *et seq.* (McKinney 1984). The Martin Act governs the offer and sale of securities, commodities, cooperative apartments and condominiums, and regulates the conversion of residential apartment units to cooperative or condominium ownership. The 45–unit building at 444 East 57th Street was converted to condominium ownership under sections 352–e and 352–eeee of the Martin Act between 1981 and 1983. The conversion was accomplished under a non-eviction plan, which

provides certain protections for tenants who decide not to purchase their units at the below-market "insider's" price the conversion guarantees them, but instead to continue to rent the apartments as before.

Section 352–eeee(2)(c)(ii) sets forth permissible reasons for which a non-purchasing tenant may be evicted from the apartment, such as non-payment of rent, illegal use of the apartment, or refusal of access to the owner, but otherwise provides that "[n]o eviction proceedings will be commenced at any time against non-purchasing tenants for failure to purchase or any other reason applicable to expiration of tenancy." *Id.* Accordingly, tenants protected by the Martin Act may only be evicted for one of the reasons enumerated in section 352–eeee(2)(c)(ii), not because their lease has expired or been extinguished. This provision of the Martin Act therefore grants non-purchasing tenants of converted cooperative or condominium apartments occupancy rights separate from any lease agreement they may have with the owners of their apartments. Further, this section specifically provides that "an owner of a unit or of the shares allocated thereto may not commence an action to recover possession of a dwelling unit from a non-purchasing tenant on the grounds that he seeks the dwelling unit for the use and occupancy of himself or his family." *Id.* It is clear, therefore, that the statutory scheme grants indefinite rights of occupancy to the non-purchasing tenants, and that the purchaser of an occupied apartment is on notice of his potentially long-term inability to occupy the apartment himself. These statutory occupancy rights are separate from and in addition to the occupancy rights guaranteed to rent-regulated tenants under the rent control and rent stabilization statutes, thereby providing non-eviction protection even for apartments whose rents are not controlled by the state.

The RTC argues, without contesting any of the above, that the tenants nevertheless hold their apartments by leases which it can repudiate under FIRREA. The RTC asserts that the tenants hold their apartments pursuant to either 1) the leases which existed prior to application of rent regulation laws, or 2) the leases which remain under a holdover tenancy after preemption of state law. RTC's brief in opposition to State's motion for summary judgment, at 27. Both these arguments put the proverbial cart before the horse, however. The first ignores the fact that the state rent and securities laws do exist, and that whatever lease or other landlord-tenant relationship existed prior to the enactment of those laws is now irrelevant. The second is simply illogical, since it fails to realize that the state laws will be preempted only if FIRREA grants the RTC power to repudiate statutory tenancies. Whatever leases exist after preemption becomes relevant only after preemption has been decided, not before. Furthermore, even if there is a contractual element to the landlord-tenant relationship under the rent regulations and securities laws, the above discussion demonstrates that the tenants' right of occupancy is still independent of that contractual or lease relationship. Therefore, the RTC's power to repudiate whatever lease or contract exists does not affect the occupancy rights, which are secured by statute.

Accordingly, the State is correct that the East 57th Street tenants, as well as other rent-regulated or non-purchasing cooperative or condominium tenants in New York, enjoy occupancy rights that are independent of any lease they may have with their landlords, in this case the RTC.

B. *Does the "any contract or lease" language of FIRREA include statutory tenancies?*

█ As noted above, section 1821(e)(1) of FIRREA empowers the RTC to repudiate or disaffirm "any contract or lease" that it deems, in its discretion, to be burdensome to the failed institution. Since rent-regulated and non-purchasing cooperative or condominium tenants hold their apartments pursuant to statutory tenancies rather than traditional leases, the issue now presented is whether FIRREA's statutory language, "any contract or lease," is broad enough to include the statutory tenancies.

The RTC initially argues that the court is prevented from interpreting this section of

FIRREA by 12 U.S.C. § 1821(j), which provides:

> Except as provided in this section, no court may take any action, except at the request of the Board of Directors [of the RTC] by resolution or order, to restrain or affect the exercise of powers or functions of the [RTC] as a conservator or a receiver.

Just what this section of FIRREA means is disputed by the parties. The RTC seeks to interpret it broadly, as a prohibition on the construction or interpretation of FIRREA by federal courts absent an express invitation to do so by the RTC itself. This broad interpretation, however, would be unconstitutional and is therefore untenable. As the court in *Rosa v. Resolution Trust Corp.*, 752 F.Supp. 1231 (D.N.J.1990), observed, " 'FIRREA did not, and Constitutionally could not, divest an aggrieved plaintiff of the right to seek legal redress when the very subject of the grievance is agency action that is allegedly arbitrary and statutorily impermissible.' " *Id.* at 1236 (quoting *Rechler Partnership v. Resolution Trust Corp.*, No. 90 Civ. 3091 (D.N.J. Sept. 4, 1990), slip op. at 4.9–4.10).[3] While any judicial interpretation of FIRREA would, in its most general sense, "restrain" the RTC, this broad interpretation of the prohibition in section 1821(j) would "vest RTC with unreviewable power to do as it pleases," and thereby constitute a clear violation of the separation of powers. *Rechler Partnership, supra,* at 4.8.

The State advocates a narrower view of section 1821(j), characterizing it as at most a restraint on federal court interference with the substantive decisions of the RTC, not as a prohibition against judicial interpretation and construction of FIRREA. This is the interpretation adopted by the Third Circuit in *Rosa v. Resolution Trust Corp.*, 938 F.2d 383, 397–98 (3d Cir.1991).

There, the court first considered what the RTC's "powers or functions" were under FIRREA, and then examined whether the disputed court action would "restrain or affect" those statutory powers and thereby violate section 1821(j). Undertaking the same analysis here, it is clear that the court's efforts to interpret FIRREA in this case will not restrain the exercise of the RTC's powers or functions, and therefore will not run afoul of section 1821(j), if those powers or functions do not include the repudiation of statutory tenancies. Therefore, the dispute about the prohibition of section 1821(j) effectively merges with the determination of whether section 1821(e)(1) expressly preempts the state rent and securities laws, since if the "any contract or lease" language in section 1821(e)(1) does not include statutory tenancies, there will be no preemption and no judicial "interference" as restricted by section 1821(j).

Returning therefore to the construction of "any contract or lease" in section 1821(e)(1), the case of *In re Friarton Estates Corp.*, 65 B.R. 586 (Bankr.S.D.N.Y. 1986) is instructive once again. In that case, the bankruptcy court considered whether a trustee in bankruptcy might, pursuant to section 365 of the Bankruptcy Code, 11 U.S.C. § 365, remove rent-controlled tenants from apartments owned by the bankrupt party. Section 365 empowers the trustee to "assume or reject any executory contract or unexpired lease of the debtor," just as section 1821(e)(1) of FIRREA authorizes the RTC to repudiate or disaffirm "any contract or lease." The *Friarton* court remarked that the trustee's power to remove statutory tenants under the authorization of section 365 was "suspect," since, as noted above, rent-regulated tenants do not hold leases, but rather statutory tenancies. *Friarton, supra,* 65 B.R. at 592.[4] The same reasoning applies here,

---

**3.** The RTC notes that *Rosa* was overturned by the Third Circuit. While the district court's preliminary injunction was indeed reversed, *Rosa v. Resolution Trust Corp.*, 938 F.2d 383 (3d Cir.1991), the appeals court did not reject the district court's reasoning regarding the scope of section 1821(j). Instead, the court stressed that its ruling involved only "application of section 1821(j) to a portion of this injunction, and we

express no opinion as to the general scope of the language of that provision." 938 F.2d at 399 n. 21. The rest of the appellate opinion in *Rosa* is consistent with the narrower interpretation of this section discussed below.

**4.** The court in *Friarton* set forth two alternative grounds for its holding that the debtor could not avoid the strictures of the state rent control laws

where the plain language of the statute, "any contract or lease," does not include rights of occupancy created by state statute and independent of any contract or lease between the landlord and tenant. *Cf. Patterson v. Federal Deposit Ins. Corp.*, 918 F.2d 540, 543 (5th Cir.1990) (finding that since plaintiff's homestead right was protected by the Texas constitution, it was independent of any agreement between the parties and therefore not included within term "agreement" in 12 U.S.C. § 1823(e)).

Lending further support to the view that "any contract or lease" should not be interpreted broadly to include non-lease statutory rights of occupancy is Congress' list of duties and goals for the RTC. 12 U.S.C. § 1441a(b)(3)(C) instructs the RTC to conduct its operations in a manner which:

(i) maximizes the net present value return from the sale or other disposition of institutions ... or assets of such institutions;

(ii) minimizes the impact of such transactions on local real estate and financial markets;

(iii) makes efficient use of funds obtained from the Funding Corporation or from the Treasury;

(iv) minimizes the amount of any loss realized in the resolution of cases;

(v) maximizes the preservation of the availability and affordability of residential real property for low- and moderate-income individuals.

The court may look to all of these instructions for guidance in interpreting the other provisions of FIRREA that set forth the powers Congress granted the RTC. *See King v. St. Vincent's Hosp.*, —— U.S. ——, ——, 112 S.Ct. 570, 574, 116 L.Ed.2d 578 (1991) ("a statute is to be read as a whole, since the meaning of statutory language, plain or not, depends on context.") (citations omitted). Three of the instructions are relevant to the RTC's powers under section 1821(e)(1). Subdivision (i), which instructs the RTC to maximize the net present value return of the assets of failed thrift institutions under its control, clearly weighs in favor of an expansive interpretation of the RTC's repudiation powers under section 1821(e)(1). Such expansive powers would enable the RTC to increase the value of its apartments under rent and securities law restrictions. However, Congress's admonition to the RTC in subdivision (ii) to minimize the impact of the RTC's actions on the real estate market weighs in favor of a narrow construction of section 1821(e)(1). Broadening the powers of the RTC under section 1821(e)(1) by allowing it to repudiate tenants' non-lease rights of occupancy would negatively affect the real estate market in New York, and thus run counter to 12 U.S.C. § 1441a(b)(3)(C)(ii).[5] Further, subdivision (v), which requires the RTC to maximize the preservation of affordable housing, also weighs against expanding the scope of the RTC's powers under section 1821(e)(1), since some of the tenants potentially affected by the RTC's asserted power to repudiate leases in this situation are undoubtedly low- and moderate-income tenants. This is true despite the fact that there is no indication in the present record that the tenants of the nine East 57th Street units are low- or moder-

---

through bankruptcy. One is its construction of the "executory contract or unexpired lease" language in section 365, discussed above. The other ground for its holding was that, under 28 U.S.C. § 959(b), trustees in bankruptcy are obligated to obey all "valid laws of the state," thereby requiring compliance with the state rent regulatory laws. The RTC seeks to distinguish *Friarton* by pointing out that there was no preemption of state law in that case because of section 959(b). That argument, while true, does not diminish the fact that the *Friarton* court's construction of the "executory contract or unexpired lease" language is still relevant to the construction issue presented here.

5. The effect of the real estate market in New York can be appreciated by the following figures: As of February, 1991, the RTC was in control of approximately 1,000 rent-regulated condominium or cooperative apartments in New York State. It expected about 1,000 more such apartments to come into its control over the next year. Affidavit of Frederick K. Mehlman, Jan. 8, 1992, Exhibits AA and BB. Interpreting section 1821(e)(1) to include the power to repudiate non-lease statutory occupancy rights would remove all of these apartments from rent and securities laws restrictions, and would certainly have a large impact on the real estate market in New York.

ate-income individuals, and that New York's rent protections are not linked to income.[6]

Accordingly, two of the three relevant goals behind the RTC's powers counsel a restricted rather than expansive interpretation of the RTC's powers. Therefore, the court declines to expand the reach of section 1821(e)(1) beyond traditional leases and contracts, especially in light of the presumption against preemption that operates in this case. *See Rowe v. Pierce*, 622 F.Supp. 1030, 1033 (D.D.C.1985).

Having determined that the RTC's repudiation powers under section 1821(e)(1) do not extend to statutory tenancies created under state law, and that rent-regulated or non-purchasing tenants of cooperative or condominium apartments hold statutory tenancies instead of leases, it is clear that the RTC's rights, powers, and privileges do not include the power to evict rent-regulated or non-purchasing tenants of cooperative or condominium apartments. Since the state's rent control, rent stabilization, and real estate securities laws therefore do not subject the RTC to state supervision or direction in the exercise of its rights, powers and privileges, those laws are not expressly preempted by FIRREA. 12 U.S.C. § 1821(c)(2)(C).

The RTC's arguments on express preemption misunderstand the issues before the court. In all of the cases cited by the RTC, there was clear power in the federal statute to do whatever the government agency sought to do. Here, no such power exists. Accordingly, those cases are inapposite. *See, e.g., Resolution Trust Corp. v. Elman*, 949 F.2d 624 (2d Cir.1991) (RTC's clear power under section 1821(d)(5)(D) to disallow any claim by a creditor or claim of security or priority preempts state retaining lien law); *Federal Deposit Ins. Corp. v. Shain, Schaffer & Rafanello*, 944 F.2d 129 (3d Cir.1991) (same).

### III. *Conflict Preemption*

■ The court must next consider whether FIRREA has preempted the state rent and securities laws because of a conflict between state and federal law. A conflict exists when application of the state laws will create "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *International Paper Co. v. Ouellette*, 479 U.S. 481, 492, 107 S.Ct. 805, 811, 93 L.Ed.2d 883 (1987) (citations omitted); *see also ARC America Corp., supra*, 490 U.S. at 100–101, 109 S.Ct. at 1664–1665; *Silkwood, supra*, 464 U.S. at 248, 104 S.Ct. at 621. Preemption will depend, therefore, on what Congress' objectives were in enacting FIRREA, and on whether the state laws present an obstacle to their accomplishment.

The RTC argues that its congressional mandate under FIRREA to "manage and resolve" failed thrift institutions effectively preempts all state laws that conflict in any way with its efforts to resolve the failed institutions, and that since the state rent and securities laws involved here conflict with those efforts, they are perforce preempted. These contentions do not withstand analysis, however.

First, the RTC claims that there is a direct conflict in this case between state laws that prevent repudiation of residential "leases" and FIRREA's provision authorizing such repudiation. As the prior discussion demonstrates, however, no such direct conflict exists, since FIRREA does not provide the power the RTC seeks to exercise in this case. FIRREA does not authorize the RTC to repudiate statutory tenancies, and since the tenants in this case enjoy occupancy rights by virtue of those statutory tenancies, the RTC has no power to evict the tenants. Thus, the situation here is not one where a federal statute allows certain

---

**6.** While the RTC's policy statement on repudiation does exempt low- and moderate-income tenants from eviction, this is irrelevant to the scope of the RTC's *power* under section 1821(e)(1) to repudiate statutory tenancies. Since section 1821(e)(1) says nothing about in-come levels, if the section is interpreted to encompass the power to repudiate statutory tenancies, the RTC would not be required to adopt the income exemptions that it has in fact adopted in this case.

agency action while state laws prohibit it, as the RTC claims.

Second, the RTC complains that the state laws effectively thwart its efforts to comply with Congress' mandate to "maximize the net present value return from the sale or other disposition of institutions ... or the assets of such institutions." 12 U.S.C. § 1441a(b)(3)(C). Therefore, the RTC argues, the state rent and securities laws should be preempted in order to allow the RTC to accomplish its mandate. The congressional mandate in section 1441a(b)(3)(C), however, is an instruction to the RTC on how to exercise the powers granted to it under other sections of FIRREA; it is not a grant of power in itself. The fact that the RTC would be freer to pursue one of its statutory goals if the state law restrictions did not exist does not by itself require preemption, since no conflict exists between federal statutory power and state statutory restrictions.

Further, since Congress did not give the RTC the power that it seeks to exercise here, i.e. to repudiate statutory tenancies, such repudiation cannot be part of the objectives of Congress that the court must consider under the conflict preemption analysis. While the RTC's inability to evict rent-regulated tenants may indeed hinder its resolution efforts, such hindrance derives not from restrictions state laws place on the powers of the RTC, but rather from the fact that Congress did not give the RTC the power to repudiate statutory tenancies in the first place. Therefore, the RTC's protestations that state rent and securities laws thwart its efforts to dispose of the assets of failed savings and loans are misdirected. The RTC should be complaining to Congress, not to the State of New York, since it is Congress that has impaired the RTC's ability to repudiate statutory tenancies, not New York State.

Absent the statutory power it seeks, there is no conflict between federal and state laws in this area, and consequently no basis for preemption of the state rent and securities laws.

The cases cited by the RTC in its conflict preemption brief all deal with direct conflict between specific powers granted in federal statutes and contrary state law restrictions, and are therefore inapposite to the question presented here. *See, e.g., Colorado ex rel. Colorado State Banking Bd. v. Resolution Trust Corp.*, 926 F.2d 931, 936 (10th Cir.1991) (conflict between 12 U.S.C. § 1823(k), which allows emergency acquisitions of bank branches notwithstanding any provision of state law, and state laws prohibiting branch acquisition through mergers); *Federal Deposit Ins. Corp. v. Bank of Boulder*, 911 F.2d 1466 (10th Cir.1990) (conflict between state law prohibition of assignment of letters of credit and 12 U.S.C. § 1823(c)(2)(A), which contains clear authorization for FDIC to purchase assets and liabilities of insured savings and loans); *NCNB Texas Nat'l Bank v. Cowden*, 895 F.2d 1488, 1501 (5th Cir. 1990) (conflict between federal statute allowing FDIC to transfer fiduciary appointments of an insolvent bank to federally established bridge banks and state statutes forbidding such transfers); *Valley Ranch Dev. Co. v. Sunbelt Sav. FSB*, 714 F.Supp. 817 (N.D.Tex.1989) (conflict between Texas fraudulent transfer statute and FSLIC's power under federal statute to transfer assets in its discretion).

While Congress certainly intended FIRREA to give the RTC broad powers,[7] the fact remains that it did not give the RTC the power to repudiate statutory tenancies. The RTC cannot enlarge its powers under FIRREA by arguing that Congress' objectives for it were broader than the powers

---

**7.** In creating the RTC, Congress intended to "enhance certain powers of the FDIC and to eliminate impediments to the efficient resolution of failed financial institutions." *Federal Deposit Ins. Corp. v. Shain Schaffer & Rafanello*, 944 F.2d 129, 131 (3d Cir.1991); *see also Smallwood v. Office of Thrift Supervision*, 925 F.2d 894 (6th Cir.1991). FIRREA evidences congressional intent to give broad powers to the RTC to resolve the crisis in the savings and loan industry, including powers that the savings and loans did not enjoy prior to being taken over by the RTC. *See, e.g.,* 12 U.S.C. § 1825(b) (no involuntary liens against the property of the receiver); 12 U.S.C. § 1821(d)(12) (mandatory 90–day stay of pending litigation); 12 U.S.C. §§ 1829 and 1822 (no bonds required of the FDIC).

granted by statute; conflict preemption doctrine cannot be used to give the RTC powers that Congress did not see fit to confer on the corporation. Conflicts only exist where there is power under federal statute that is prohibited under state law. Since the power prohibited by state law in this case was never granted to the RTC in the first place, no preemption of state law is possible here.

### IV. *Lloyd Ribner's Rights of Succession*

■ The RTC also moves for declaratory judgment that it is entitled to evict one of the individual tenants, Lloyd Ribner, Jr., from apartment 14–E at 444 East 57th Street. Ribner seeks to succeed to the occupancy rights of his recently deceased mother. The RTC contends that, even if it is subject to the state rent control and securities laws, Ribner has no right to occupy this apartment. Under the rent control law, a person is entitled to succeed to the right of possession of a rent-controlled apartment where

> [the] family member has resided with the tenant in the housing accommodation as a primary residence for a period of no less than two years, or where such person is a "senior citizen" or "disabled person" ... for a period of no less than one year immediately prior to the permanent vacating of the housing accommodation by the tenant....

N.Y. Comp.Codes R. & Regs., tit. 9, part 2204.6(d)(1) (1990). Ribner alleges that he lived with his mother in the apartment for the requisite period of time. *See* Affidavit of Lloyd Ribner, Jr., Jan. 24, 1992, ¶ 2; Reply Affidavit of Lloyd Ribner, Jr., Jan. 31, 1992, ¶ 1. The RTC presents evidence that he did not occupy the apartment for the required time period, and that he is therefore not entitled to succeed to his mother's tenancy. Affidavit of David A. Yadgaroff, Jan. 30, 1992, ¶¶ 2–4. Given this dispute as to the facts concerning Ribner's occupancy of the apartment, summary judgment cannot be granted to either side on this issue. Rule 56, F.R.Civ.P.[8]

---

**8.** Ribner's counsel cites New York procedural law throughout his brief in support of summary judgment. Counsel is reminded that in federal court, even where state law provides the substantive rule of decision, the Federal Rules of

Nevertheless, Ribner points out that the RTC is required by the rent control laws to give him *thirty days' notice before bringing any proceeding to regain possession of the apartment.* N.Y. City Admin.Code, 26–403(e)(2)(i)(10) *reported following* N.Y. Unconsol. Law § 8617 (McKinney 1987); *Louis v. Barthelme,* 179 A.D.2d 604, 579 N.Y.S.2d 656 (1st Dep't 1992). The record contains no indication that such a notice was ever served upon Ribner. Accordingly, the RTC's complaint must be dismissed as against Ribner.

### V. *Conclusion*

In sum, the State's motion for summary judgment is granted and the RTC's motion for summary judgment is denied. FIRREA has not preempted New York's rent control law, its rent stabilization law, or the sections of its general business law dealing with the offer and sale of securities, and the RTC must abide by their provisions. Further, the motion of Lloyd Ribner, Jr., to dismiss the complaint in No. 91 Civ. 1361 as against him is granted.

IT IS SO ORDERED.

Civil Procedure, as explicated in the decisions of federal courts, govern procedural matters such as the standard for summary judgment. *See* Rule 56, F.R.Civ.P.; *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965).