**Janice L. BOOKER, Appellant**

v.

**Cynthia E. EDWARDS and Henry G. Cisneros, Secretary of the Department of Housing and Urban Development, Appellees.**

**No. 95–5215.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 15, 1996.

Decided Nov. 8, 1996.

---

Benny L. Kass, Washington, DC, argued the cause and filed the briefs for appellant.

Michael J. Ryan, Assistant U.S. Attorney, Washington, DC, argued the cause and filed the brief for the federal appellees. Eric H. Holder, Jr., U.S. Attorney, and R. Craig Lawrence, Assistant U.S. Attorney, Washington, DC, were on the brief with him.

Jeffrey D. Watkiss, Washington, DC, argued the cause and filed the brief for appellee Cynthia E. Edwards.

Before: WILLIAMS, ROGERS and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge WILLIAMS.

STEPHEN F. WILLIAMS, Circuit Judge:

The Department of Housing and Urban Development became the owner of a house as a result of a default by its owner on a HUD-insured mortgage. HUD allowed the defaulting mortgagor to remain in the house under a month-to-month lease. When HUD sold the property to the highest bidder, the defaulting mortgagor sought to invoke a District of Columbia law entitling a tenant to a right of first refusal when the premises are sold. HUD instead applied its own regulations. As it read them, a defaulting mortgagor—even one who after default occupies the premises under a lease—has no such rights. Because HUD's interpretation of its regulations is plainly valid and preempts conflicting local law, we need not reach the issue whether the District provision would otherwise be applicable to HUD. The defaulting mortgagor, who has for more than three years thwarted the winning bidder's right to the house, must now yield.

\* \* \*

Janice L. Booker owned a house in Northeast Washington, D.C., subject to a HUD-insured mortgage. She defaulted. The mortgagee foreclosed and then, when HUD paid the insurance claim on the resulting loss, transferred the property to HUD. The Department allowed Booker to remain in occupancy of the house under a month-to-month lease. HUD put the house on the market in a sealed bid auction and Booker bid for it—but Cynthia Edwards's bid topped hers by more than $10,000.

When Booker refused to vacate, claiming a right of first refusal under D.C.Code § 45-1637, Edwards sued Booker in D.C. Superior Court, seeking possession. Besides resisting the suit, Booker filed a complaint in Superior Court against both Edwards and HUD. The cases were consolidated, and HUD removed them to the United States district court pursuant to 28 U.S.C. § 1442's provision for removal of actions against a federal officer or agency, as well as the general provisions for removal of actions over which the district courts would otherwise have original jurisdiction, 28 U.S.C. §§ 1441(a), 1446. Federal jurisdiction over the dispute between Booker and Edwards appears to fit comfortably with the district court's supplemental jurisdiction under 28 U.S.C. § 1367(a). The district court found that HUD lawfully deeded the property to Edwards, to the exclusion of Booker, and granted summary judgment in favor of Edwards and HUD. We affirm.

\* \* \*

We assume in Booker's favor that she is right in her claim that under District law she would be entitled as a tenant to exercise a right of first refusal, even though HUD is the owner of the property. Such a reading of District law could be effected in full accord with HUD regulations if Booker were a tenant who had not been the defaulting mortgagor. The regulations provide:

(4) Tenants in occupancy will be offered the right of first refusal to purchase the property where:

(i) The tenant has a recognized ability to acquire financing and a good rent-paying history, and has made a request to HUD to be offered the right of first refusal; or

(ii) State or local law requires that tenants be offered the right of first refusal.

24 CFR § 291.100(a)(4) (1996).

In the very same regulation, however, HUD also makes it clear that a defaulting mortgagor is not entitled to such a privilege:

(2) Former mortgagors in occupancy who have defaulted on the mortgage will not be offered the right of first refusal to repurchase the same property. They may

submit an offer, or bid, to purchase the property when it is publicly listed, which will be treated in the same manner as other offers received from other prospective purchasers during the listing period. *Id.* § 291.100(a)(2). There is no question that Booker is a "former mortgago[r] in occupancy who [has] defaulted on the mortgage." The question, then, is whether signing a lease and becoming HUD's "tenant" undercut § 291.100(a)(2)'s express disabling provision and left her free to enjoy a tenant's right of first refusal under § 291.100(a)(4).

■ HUD's Property Division Handbook—which government counsel at oral argument said gets a good deal more public circulation than do its regulations—provides an answer. It says that "[t]enants in occupancy, *excepting former mortgagors,* will be offered the right of first refusal...." Property Division, U.S. Dep't of Housing and Urban Development, Handbook 4310.5, REV–1, ¶ 6–10B (emphasis in original). Under a long line of cases on the deference that is due agencies' interpretations of their own regulations, we review only to determine if HUD's reading is reasonable. See, e.g., *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). It is.

First, HUD noted in the preamble to the rule that it had considered extending the right of first refusal to defaulting mortgagors but decided against it. "HUD's prior experience with granting the right of first refusal to former mortgagors proved to be counterproductive, because many of them did not have the financial capability to close the sale, resulting in additional holding costs to the Department." Single Family Property Disposition Program, 56 Fed.Reg. 48,964/3 (September 16, 1991). Thus HUD's primary reason for denying defaulting mortgagors a right of first refusal is one that would seem to apply to those who happen to become tenants in the interval between foreclosure and resale as much as to any other defaulting mortgagors.

Further, under HUD regulations no defaulting mortgagor will ever be in possession without a lease. Subject to minor exceptions for ill or injured occupants, *all* who occupy single-family homes in HUD's ownership un-

der this insurance program, former mortgagor or not, must sign leases. 24 CFR § 203.674(b)(2). Thus, under Booker's interpretation § 291.100(a)(2)'s express denial of the right of first refusal for defaulting mortgagors would apply only to those who were completely out of possession—persons who would appear to have so little claim to a right of first refusal as hardly to be worth mention. And if executing a lease with a defaulting former mortgagor meant that the person would secure a right of first refusal—which HUD found "counterproductive" because of its experience—it would presumably incline HUD officers simply to evict people such as Booker.

At oral argument Booker suggested there was something anomalous in HUD's allowing a right of first refusal under local law to persons who may not have a good credit history—see 24 CFR § 291.100(a)(4)(ii)—but denying that right to defaulting mortgagors. But it seems reasonable of the Department to defer to local law in the general default case (those who fail affirmatively to qualify under § 291.100(a)(4)(i)), yet take advantage of its own experience in a specific class of cases in which it has learned to expect trouble—defaulting mortgagors, whose apparently recurrent inability to close the transaction has generated extra closing costs. See 56 Fed.Reg. at 48,964/3. The distinction seems especially valid in light of the Department's equitable point that it is defaulting mortgagors whose conduct has caused the problem in the first place. *Id.* at 48,965/1.

■ We have assumed that in the absence of preemption District law would afford Booker a right of first refusal. Booker points out that "federal regulation of a field of commerce should not be deemed preemptive of state regulatory power in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained." *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963). But the Supreme Court has been quite clear that "[t]he statutorily authorized regulations of an agency will pre-empt any state or local law that conflicts with such

regulations or frustrates the purposes thereof." *City of New York v. FCC*, 486 U.S. 57, 64, 108 S.Ct. 1637, 1642, 100 L.Ed.2d 48 (1988). If the regulation and state law cannot be reconciled, we are to disturb a federal regulation only if the agency's failure to accommodate local law "is not one that Congress would have sanctioned." *Id.* (citation omitted).

■ Booker points to nothing in the statute or legislative history suggesting that Congress would not have sanctioned HUD's resolution of the issue. In fact, Congress gave HUD broad authority to manage properties acquired through the operations of its various mortgage programs—"to deal with, complete, rent, renovate, modernize, insure, or sell for cash or credit, in his discretion, any properties...." 12 U.S.C. § 1710(g). The disposal and management of federal property is, moreover, an area traditionally governed by federal law. See *Clearfield Trust Co. v. United States*, 318 U.S. 363, 366, 63 S.Ct. 573, 574–75, 87 L.Ed. 838 (1943). Of course in the absence of federal regulation, even when federal property issues are involved, courts incorporate local law as the federal rule, unless there is a clear need for a federal common law rule arising from factors such as a need for uniformity. *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 728, 99 S.Ct. 1448, 1458, 59 L.Ed.2d 711 (1979). But where there is no doubt that a "regulatory scheme, complete as it is in every detail, was intended to provide the whole and exclusive source of protection of the [relevant] interests," *United States v. Shimer*, 367 U.S. 374, 381, 81 S.Ct. 1554, 1559, 6 L.Ed.2d 908 (1961), the regulatory scheme controls. See also *Free v. Bland*, 369 U.S. 663, 668, 82 S.Ct. 1089, 1093, 8 L.Ed.2d 180 (1962) (holding that state law must give way to Treasury Department regulations governing survivorship rights in U.S. bonds). By contrast, a regulation that does not clearly establish a uniform federal rule may be construed to leave room for application of local law. See *North Dakota v. United States*, 495 U.S. 423, 442 & n. 12, 110 S.Ct. 1986 & n. 12, 1998, 109 L.Ed.2d 420 (1990) (interpreting Department of Defense regulations of alcohol sales, enacted under a statute allowing regulation of alcohol sales "at or near" military installa-

tions, as not preempting state regulations that had the incidental effect of raising costs to military alcohol consumers). The HUD regulations here clearly fall into the former category, completely covering the issue of rights of first refusal.

Booker cites *Rowe v. Pierce*, 622 F.Supp. 1030 (D.D.C.1985), in which the court addressed a conflict between a District law not allowing eviction on the ground of the tenant's refusal to sign a lease, and a HUD regulation calling for eviction on precisely that ground. Because the court found "absolutely no indication that the Secretary intended to preempt state law," *id.* at 1033, it held that the District law was not preempted. To the extent that the *Rowe* court looked for some precise manifestation of intent to preempt local law, we think its methodology inconsistent with that of cases like *City of New York* and *Shimer*. In many cases the agency may never have dreamed that local regulation might bear on the issue its regulation resolved. It is enough that the agency, with appropriate Congressional authorization, intended to encompass the area in question—an intent relatively readily found for activities characteristically governed by federal law such as the disposition of federal property. Here, in fact, HUD did address the issue of preemption, expressly allowing local law to control in some cases, 24 CFR § 291.100(a)(4)(ii), but not in the rest. The regulation's complete coverage of the issue in question, however, was sufficient.

As Booker had no right of first refusal, and accordingly no claim to upset HUD's conveyance of the property to Edwards, the district court's grant of summary judgment in favor of Edwards and the Department is

*Affirmed.*